Theodobe Daohehhauseh, Jb., J.
Petitioner, the mother of a ten-year-old physically handicapped child, seeks an order directing payment of her daughter’s tuition and maintenance at Cobb Memorial School, a private residential educational facility located in Altamont, New York, together with transportation costs, medical, dental and therapeutic treatment expenses.
At the outset of the hearing, the attorneys for each of the parties stipulated that the child in question is handicapped within the meaning of section 232 of the Family Court Act, without conceding the type of educational services which may be appropriate for her. This brain-injured child presently attends special educational classes maintained by a Board of Cooperative Educational Services here in Westchester County. She has been observed to behave inappropriately with her peers and evidently has no real understanding of how to play with them. Her speech is oddly inflected, her bizarre head movements and hand flapping serve to set her apart from her classmates. Although she ambulates independently, her gait is noticeably *662 other children, evidencing a rather severe emotional problem in addition to her physical handicap. If left to her own devices at school, she would prefer to play endlessly with pieces of string.
She presents a formidable management problem at home. Her parents have been separated for approximately the past five years and the maternal grandparents now live in the house with the child’s mother and the child’s older brother. There is considerable friction in the home caused in part by the marital problem, which, understandably, has had an adverse effect upon the child. Her 13-year-old brother and his friends, who do not fully understand her handicap, have unintentionally contributed to her difficulties. There is no unified approach to the child’s problems at home and she has little, if any, contact with other children in the neighborhood. It appears that whatever progress has been achieved by her at BOOBS from 9:00 a.m. to 3:00 p.m. has been undone by the dynamics in the child’s home, where she has received a setback for lack of sufficient support, direction and follow-up. Her mother is employed full time in order to provide support for the family, and the grandparents are at an age where they can no longer cope with their handicapped granddaughter’s needs after school. It is further noted that psychiatric therapy, involving both the child and her mother, was implemented in conjunction with the BOOBS program for approximately two and a half to three years, without any noticeable benefit.
Her handicap has been diagnosed as “ chronic brain syndrome with cerebral palsy and retardation within an educable range, ” from which flows the unalterable prediction that she will be a dependent person for her entire life. No type or amount of special education can train her to the point where she could lead a normal, independent existence. Within reasonable limits, however, she is trainable and educable. The measure of success achieved through special education and training, in the main, will determine the degree to which she may ultimately achieve a less dependent adulthood. There is no question but that, from an educational viewpoint, there is within reach a reasonably attainable, worthwhile goal for this child to achieve.
The court is satisfied that her special educational program at BOOBS, where she has been enrolled for the past five years, is adequate to meet the needs of children with similar physical handicaps who, by acquiring passable adaptive behavior, hopefully will be able to achieve some measure of independence in later life. Because of her overlying emotional problem, however, this child is not receiving any appreciable benefit from this *663 special educational program. The uncontradicted testimony of the experts who testified on the hearing leads the court to conclude that if this child is to be given a reasonable opportunity to progress in her training and education she must be in a structured environment which will serve to support and reinforce her around-the-clock. Such a setting can be achieved in this case only by enrolling her in a residential school offering the type of1 special education which she requires. Cobb Memorial School, a small residential school for trainable retarded children, with the usual supportive services, appears to offer the type of special education which would benefit this child at the present time. The school has been approved by the State Education Department for the education of similarly handicapped children.
Bather than attempt to refute the foregoing, the main thrust of some respondents herein was to bring out that since BOCES has been providing admittedly adequate special educational services suitable for children with a similar type of handicap, it must then follow that the need for a private residential school arises solely because of an emotional problem which has its genesis in the home. Therefore, it is urged, her institutionalization should not be at public expense. This line of reasoning is not supported by the language of the controlling statute which does not concern itself with how or from what source a child’s handicap has arisen. Section 232 of the Family Court Act plainly states that this court has jurisdiction over physically handicapped children. Section 232 (subd. [a], par. [1]) provides in part, ‘ * Whenever a child within the jurisdiction of the court * * * appears to the court to be in need of special educational training, including transportation, tuition or maintenance * * * a suitable order may be made for the education of such child in its home, a hospital, or other suitable institution, and the expenses thereof, when approved by the court and duly audited, shall be a charge upon the county or the proper subdivision thereof wherein the child is domiciled at the time application is made to the court for such order ”,
This statute does not in any manner appear to limit its benefits to those children whose physical disability arose in any particular manner or place. It speaks only in the broadest terms, which this court interprets to include any physically handicapped child in need of special educational training.
Accordingly the court finds the child in this matter to be physically handicapped within the meaning of subdivision (c) of section 232 of the Family Court Act (see, also, Public Health Law, § 2580), and in need of special educational training at a residential facility on a .seven-day-a-week basis. It is therefore *664 directed that she be enrolled at Cobb Memorial School, Altamont, New York, for the 1972-73 school year, beginning September 1,1972, where an annual tuition and maintenance charge in the sum of $4,800 is hereby approved.
The Constitution of the State of New York, under section 1 of' article XI, states: £ £ The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of the state may be educated. ” ££ This includes the duty to establish £ schools for physically or mentally handicapped or delinquent children,” (Matter of Wiltwyck School for Boys v. Hill, 11 N Y 2d 182, 191). Article 89 of the Education Law was enacted to implement the Legislature’s obligation to physically and mentally handicapped, emotionally disturbed and non-English speaking children. Of the seven sections contained within said article, several appear to relate to the facts in this case. .Section 4407 of the Education Law authorizes the State Education Department to expend not more than $2,000 per annum per child for the education of handicapped children who meet certain criteria described therein.
It must be further noted that the State Education Department, through its Supervisor in Education for the Handicapped, has informed the Clerk of this court in writing that this child has previously been approved for State aid in the sum of $2,000 under the provisions of section 4407, by determining that she is handicapped and that there is no adequate public facility for her instruction within the State. This would leave a balance in the sum of $2,800 to be raised from some other source in order to defray the child’s annual tuition and maintenance charges at Cobb Memorial School.
Section 4403 of the Education Law, the catch line of which reads: “ Procedure through family court; cost of educational services”, states in part as follows: ££ 1. The state education department shall have the power and duty to provide within the limits of the appropriations made therefor, home-teaching, transportation, scholarships in non-residential schools, tuition or maintenance and tuition in elementary, secondary, higher, special and technical schools, for handicapped children in whole or in part from funds of the department, ivhen not otherwise provided by parents, guardians, local authorities or by other sources, public or private. ”
In addition, the court is not unmindful of the provisions of subdivision (b) of section 234 of the Family Court Act, which details the procedure for obtaining from the persons liable under the law for support, payment of the expense for court ordered special educational services rendered a physically handicapped *665 child within New York City. The omission of statutory language making the same provisions applicable outside the counties within the City of New York is deemed a legislative oversight. To hold otherwise would, in effect require parental contribution in New York City only and not elsewhere in the State, which would work a clear violation of the equal protection clause of our Constitution.
In any event, the omission is not fatal inasmuch as there is ample statutory authority to support the court’s fixing an order directing .support of this child by her parents. Section 413 of the Family Court Act places primary responsibility on the father to support his child, while section 414 fixes responsibility on the mother of the child if the father is dead or incapable of support. Section 416 of the Family Court Act provides that the expenses of educating a child is one of the elements of support.
The child’s mother is a college graduate, having received a B.S. degree in food and nutrition. She is presently employed as staff dietician at a nearby hospital at an annual salary of $7,800. She alone holds title to her home in Scarsdale worth not less than $50,000, on which the outstanding mortgage balance is now not more than $11,000. Her aged parents, from whom she has borrowed money in the past, live with her and “pay their own way ’ ’, which when translated into dollars should equal the sum of not less than $200 per month for both. She operates her own car and the court takes judicial notice of the fact that her residence is within three hours’ driving time from Cobb Memorial School. Therefore, that portion of the petition which seeks payment of transportation costs is denied.
The child’s father, aged 42, is college educated, having studied at both Pratt Institute and Columbia University School of Business Administration (undergraduate). Except for one year, when he earned $18,000 in a family furniture manufacturing business owned by his late father, he has spent the balance of his adult life in the industrial management-business administration field, with average annual earnings of not less than $12,000. He has recently had two job offers, one in Dallas at a yearly salary of $16,000, and another in Atlanta at $18,000, both of which he turned down in order to be near his two children, who have been in his wife’s custody for the past five years. He claims to have been unemployed since February, 1971, but somehow manages to get by in rather acceptable fashion, with help from a few relatives and a lot of friends. Although his unemployment insurance benefits were exhausted in October, 1971, he has been able to obtain odd jobs and other assignments from “ friends ” who quite mysteriously keep him going. From his own testimony, *666 the court finds he has an earnings potential of not less than $12,-000 per year and up to as high as $18,000.
The cases are legion which hold that the father’s present economic condition is not the measure of the proper amount of support for his dependent children, but rather it is the father’s ability to provide — his potential earning power which must be considered. The fact that he does not work does not, in and of itself, preclude his capacity to work, nor preclude a finding that he has means wherewith to discharge an order for support. (De La Ferriere v. De La Ferriere, 94 N. Y. S. 2d 147.) The court is under an affirmative duty to fix an order measured by respondent’s ability to earn a living (De Brauwere v. De Brauwere, 203 N. Y. 460) and by the manner in which the parties were accustomed to live (Tirrell v. Tirrell, 232 N. Y. 224). The measure of ability to support is not based upon what an irresponsible husband designs to earn, but what he is potentially able to earn in light of his established capabilities. (Brandt v. Brandt, 36 Misc 2d 901.) In this connection, the court is not unmindful of .section 437 of the Family Court Act whereby a respondent is prima facie presumed to have sufficient means to support his wife and children. While respondent idles and rejects employment at substantial salaries, public moneys should not be required to fulfill his financial obligation to support his handicapped daughter.
In light of the foregoing, the child’s father, Randolph, is directed to pay through the court, weekly, to Cobb Memorial School, effective the week of July 3,1972, the sum of $55 towards defraying the annual tuition and maintenance charge of his daughter.
That portion of the petition which seeks an order directing payment of the child’s medical, dental and therapeutic treatment expenses is denied for the reason that petitioner has an administrative procedure available to her, namely, that which is set forth in article 25 of the Public Health Law (§ 2580 et seq.). Only after a parent has been ordered by the Commissioner of Health to contribute to the cost of medical services authorized under the Public Health Law may a petition be brought to Family Court to review the order and determine the extent of financial liability. (Family Ct. Act. § 232.)