Luigi B. Maeauo, J.
The above-entitled matters by stipulation were heard together and the order hereinafter made will apply to all of the cases afore-mentioned.
This is a proceeding pursuant to section 232 of the Family Court Act for an order providing funds for the education of a *340 handicapped child (age 7) for the school year 1972-1973. Annexed to the petition is the HC-3 form signed by a medical doctor and a psychologist certifying the nature of the child’s handicap and recommending specialized schooling only, together with a written statement signed by the acting Assistant Superintendent of Schools of the New York City Board of Education that the New York City public school system is unable to provide an appropriate educational facility for this child. The State Department of Education has approved a grant of $2,000 pursuant to section 4407 of the Education Law and such approval is attached to the moving papers. Also submitted is a statement in the nature of a bill for the education service from the school attended by the child, which amounts to $4,000 for the school year from which is deducted the $2,000 in State aid, leaving a balance of $2,000 for which the application is made to the Family Court.
However, the school attended by the handicapped child also maintains a residential center where this child lives and the cost of such residence is borne by the Bureau of Child Welfare. The moving papers referring to the in-residence of the child state: “ These payments are solely for room and board for the child and are not intended to and do not in fact cover the cost of tuition ”.
All of the necessary parties to this proceeding were cited by the petitioner, namely: Corporation Counsel of the City of New York, Attorney-General of the State of New York, and State Department of Education (Matter of Leitner, 38 A D 2d 554; 40 A D 2d 38). Prior to the return date of this motion, counsel for the State Department of Education submitted a letter dated January 8,1973, which letter in part, states as follows:
“ I note that this child is a public charge, and that pursuant to § 395 of the Social Services Law, a public welfare district shall be responsible for the welfare of children who are in need of public assistance and care, support and protection, residing or found in its territory insofar as not inconsistent with the jurisdiction of a Family Court. This Court clearly has jurisdiction over this handicapped child, who is the responsibility of the local socidl services agency. With regard to handicapped children, subdivision 4 (a) of § 398 of the Social Services Law provides that it is the duty of the Commissioner of Public Welfare and City Public Welfare Officers to * obtain admission to state and other suitable schools * * * in accordance with the provisions of the mental hygiene law, education law and acts relating to the family court. ’ The duty of the Education Depart *341 ment to provide tuition, maintenance, transportation for handicapped children imposed by § 4403 of the Education Law is limited to those instances in which these services cannot be provided by parents, guardians, local authorities or by other sources, public or private. The cost of the services sought by petitioner should be borne by the local social services agency. Therefore, the Commissioner of Education could not issue a certificate of approval for state aid in this matter.”
On the return date of this application the City of New York appeared by Assistant Corporation Counsel and the State Department of Education appeared by counsel. The Attorney-General did not appear.
It is not disputed that the child is a handicapped child within the definition of section 4401 of the Education Law. It is not disputed that the New York City public school system is unable' to provide an appropriate educational facility for this child. Since these two fundamental requirements have been met, an order must be made by this court to provide for the education of the child. It is the position of the City of New York that this order provide that the State and the city share equally the amount provided in said order. To this, counsel for the State Education Department is opposed on two grounds: (1) to provide for sharing the amount of this order is premature and (2) the entire cost should be borne by the Department of Social Services because the child is a public charge.
Counsel for the Commissioner of Education submitted an affidavit and a memorandum of law and in open court firmly stated the position that the Commissioner would not approve an order of this court under section 4403 of the Education Law and furthermore, .since at the time of the hearing there was no order in existence the request of the city was premature. Since the Commissioner has repeatedly stated that the order would not be approved, it is meaningless to await a formal order so that the Commissioner can again repeat ‘ ‘ no approval ’ ’. Courts do not look favorably upon exercises in futility.
Under subdivision 1 of .section 4403, the State Education Department is charged with the duty to provide proper educational facilities for handicapped children from funds of the department. The Family Court is a court of competent jurisdiction in all cases affecting the education of handicapped children (Family Ct. Act, §§ 115, 231). When the court makes an order, the Commissioner of Education does not have the power to set aside or review such an order, despite the wording of section 4403. If the Commissioner disagrees with the finding or *342 the terms of the order, his remedy is by appellate procedure, but he does not have the power or authority to refuse to issue the necessary certificate provided by the statute. His function is procedural and mechanical only after an order is made by this court. If he fails to follow the provisions of the order of the Family Court, then and only then can an article 78 proceeding be instituted in the Supreme Court. But this 78 proceeding is not in the nature of a review of the Family Court order; only the appellate courts can review the finding and order. The article 78 proceeding is to compel the Commissioner to carry out his procedural functions as outlined in section 4403. Furthermore, in our system of government divided into three branches, namely, legislative, executive and judiciary, the Commissioner of Education as a member of the executive branch can in no way review or cancel a determination of a legally constituted court.
There remains the question of whether the cost of the child’s education should be paid, by the Department of Social Services because the child is on public assistance.
It was established at the hearing that the parents in this case are wholly unable to pay for the necessary education of their child. They themselves are not receiving public assistance, but rather contribute to the New York City Bureau of Child Welfare to partially cover residence costs for their child at the Maimonides Residence — which is separate from the Maimonides School.
The history of welfare, as outlined in McKinney’s Consolidated Laws of New York (Book 52-a, Social Services Law, p. XVIII), is for the relief of the poor and the purposes of the social welfare laws have never changed.
“ Public assistance” as defined in subdivision 20 of section v 2 of the Social Services Law includes “home relief, veteran assistance, old age assistance, assistance to the blind, aid to the disabled, aid to dependent children, medical assistance for needy persons, institutional care for adults and child care granted at public expense pursuant to this chapter.”
Section 395 of the Social Servicies Law states the general responsibility of the social services district for the welfare of the children found therein. This section has not been interpreted to cover the provision of education, which is normally the duty of the Board of Education. Indeed, section 3209 of the Educa* tión Law requires public welfare officers only to provide “ suitable clothing, shoes, books, food and other necessaries to enable [indigent children] to attend upon instruction as hereinbefore required by law.” Nor does the duty of the Commissioner of *343 Social Services under section 398 (subd. 4, par. [a]) of the Social Services Law, to obtain admission of handicapped children to State and other suitable schools, imply a duty to pay for such education. Surely the Legislature would have expressed itself clearly to that effect had it so wished, especially since that very subdivision explicitly states that the procedure is to be carried out ‘ ‘ in accordance with the provisions of the mental hygiene law, education law and acts relating to the family court.” One of the provisions of the Education Law is section 4403, specifically providing for allocations of the cost of education of handicapped children between State and local authorities.
Moreover, .section 398 (subd. 4, par. [a]) of the Social Services Law applies to all handicapped children, not only those who are public charges. If the Commissioner of Education’s argument is accepted, the Department of Social Services would be wholly responsible for the education costs of all handicapped children, thereby nullifying the cost allocation provisions of section 4403 of the Education Law. In short, no provision of the Social Services Law applicable hereto supports the Commissioner’s argument.
It is important to note here that the Commissioner has ip, this case certified all those elements which would normally support a Family Court order under section 232 of the Family Court Act: the existence of the handicapping condition, the fact that there is no public facility for the instruction of the child, and the approval of the Maimonides School for the education of handicapped children.
In conclusion the court holds that the Department of Social Services is not responsible for the educational costs of the handicapped child just because the child is a public charge. The cost of this child’s education is the responsibility of the State Department of Education and the costs thereof should be shared equally between the City of Mew York and the State of Mew York.
It is accordingly hereby ordered that $2,000 for tuition for the child herein at the Maimonides School for the school year 1972-1973 be paid by the City of Mew York, which is to be reimbursed ito the extent of one half of such payments by the State of Mew York.