Luigi R. Maraño, J.
This proceeding explores the problem of deciding the responsibilities and powers of local and State governments in applications for special educational services for physically handicapped children. The action was instituted to request the Family Court to order the city to contribute to the expenses of tuition and transportation to a special education school for handicapped children, pursuant to section 232 of the Family Court Act and section 556-18.0 of the New York City Administrative Code.
James, an 11-year-old boy, has been diagnosed by two psychiatrists to be in need of special educational services, due to what the psychiatrists term ‘‘ schizophrenia, childhood type ’ ’, with * * some autistic components ’ ’. They both note his hyperactivity, his occasional destructiveness, and his inability to co-operate and communicate. I. Q. testing indicates borderline intellectual functioning. Greater intellectual potential is felt to be present, masked by his emotional difficulties.
As a result of these reports and other evidence at the hearing, it appears that James meets the statutory definition of a *1013 “ physically handicapped child.” (Family Ct. Act, § 232, snbd. [c]; Administrative Code of City of N. Y., § 558-18.0, subd. a, par. 1). Furthermore, he meets the Education Law’s definition of a “ handicapped child.” (Education Law, § 4401, subd. 1.) However, he has not yet been certified by the State Department of Education to be in need of special educational services. (Family Ct. Act, § 232, subd. [a], par. [1]; see Education Law, § 4403.) James’ hyperactivity, lack of concentration, and inability to interact with other children, have made it inappropriate for him to attend unspecialized public school classes. This is so since by definition a “ ‘ handicapped child ’ * * * cannot be educated in regular classes but can benefit by special services and programs ”. (Education Law, § 4401, subd. 1.) Furthermore, there were no public school programs suitable for someone with James ’ particular handicaps. (See Education Law, § 4404, subd. 4; § 4406.) Home teaching is also inappropriate for the child. (See Education Law, § 4404, subd. 3.)
Since none of these statutory alternatives were suitable for James’ educational needs, his parents enrolled him in a private, uncertified school which had the services necessary for the child’s education. In the Fall of 1972, James, along with 26 other handicapped children, entered the Harlyn School in Brooklyn, New York. They were the first students in this newly formed school. The Harlyn School has not been certified by the State Department of Education, however, since regulations of that department do not allow State certification until a school has been in existence for at least a year. Thus, the Harlyn School will not be able to obtain State certification before September of 1973.
Testimony at the hearing has shown the school is qualified in general and in particular for a child like James. The school premises have been inspected, and the Buildings Inspector of the City Board of Education has certified that they are physically safe for their present use.
There is no problem caused by the enrollment itself. The legal problem we must adjudicate is the parents ’ request to this court that the city pay for tuition and transportation to the school. The school charges $1,750 per term or $3,500 for the school year, which is in line with charges for private, special education facilities. The City Board of Education has provided and continues to provide transportation for James to and from school. However, it was found at this hearing, and not disputed by corporation counsel, that James’ parents are financially unable to meet the costs of special education.
*1014 The question is now whether the Family Court can order the county to provide funds for the education of a child deemed by it to be “ physically handicapped ” in an educational facility deemed by it to be “ suitable ’ ’, without State certification as to the child’s condition and the facility’s acceptability to the State for the child’s education. There are two statutory procedures for public support of a handicapped child’s special educational services. Section 232 (subd. [a], par. [1]) of the Family Court Act allows parents to petition the Family Court for an order to the county to provide special educational services for physically handicapped children. Section 4407 of the Education Law is an administrative procedure (See Matter of Daber, 71 Misc 2d 303, 305) by which the State Department of Education contracts with an educational facility for special education services for a handicapped child, and pays up to $2,000 per child per year for such services. Judge Moskoff in Daber (supra, p. 303) referred to the relationship of these laws as “ a mumbo jumbo, unconsolidated and inartistieally promulgated ” (at 949). Furthermore, Judge Shapiro in Matter of Leitner (40 A D 2d 38, 42) stated: “ It may not be amiss to note that the statutory scheme for the ordering of special educational services for a handicapped child through the Family Court and the allocation of the costs of those services is, at best, cumbersome, and at worst, unclear and unnecessarily complex.”
Section 115 of the Family Court Act, jurisdiction as is set forth in this act, includes ‘ ‘ jurisdiction over # * * proceedings concerning physically handicapped * * * children.”
Section 232 (subd. [a], par. [1] of the Family Court Act states: 1 ‘ Whenever a child within the jurisdiction of the court and under the provisions of this act appears to the court to be in need of special educational training * * * a suitable order may be made for the education of such child * * * and the expenses thereof, when approved by the court and duly audited, shall be a charge upon the county ”.
The first Leitner decision (38 A D 2d 554, 555) held that the Family Court ‘ ‘ has original jurisdiction over physically handicapped * * * children, pursuant to [the two above sections] ”. But the two Leitner decisions involved different issues than those presented here. In the first decision, the Appellate Division held (p. 555) that it was an error not to give “ notice to the Attorney-General, the Commissioner of Education and the appropriate county and municipal authorities.” The second decision, after hearing upon notice to the above-mentioned parties, dealt with Westchester County’s petition for order *1015 requiring the State to reimburse the county for one half of the expenses for the child’s special education at a school in Rhode Island, pursuant to subdivisions 1 and 2 of section 4403 of the Education Law. This was so held in the second decision. But in that instance the State Commissioner of Education had expressly approved the Family Court’s order for special education and its payment by the county. (40 A D 2d 38, 41.) In the present case there has been no such approval by the Commissioner.
Matter of Daber (71 Misc 2d 303, sufra), like the present case, involved a petition pursuant to section 232 of the Family Court Act for special educational services and raised the issue of whether failure to obtain the certificate of approval of the Commissioner of Education is fatal to maintenance of the proceeding (p. 304). After a review of the “ mumbo jumbo ” of the relevant statutes, the Family Court Judge concluded that (pp. 305-306): “ None of the statutes cited either explicitly or by inference requires certification or approval either by the local school authorities or the State Department of Education as a condition precedent to granting of relief by the Family Court. The only references to the certification are found in section 232 of the Family Court Act and section 4403 of the Education Law. The section 232 provision merely states that the Family Court may accept the certificate of the State Department of Education as to the educational needs of the child. The permissive tone of the statute is obviously designed to obviate the need to take extensive proof and testimony as to needs if such certificate is provided. If no certificate is provided, it is incumbent upon the petitioner to establish that the child is a handicapped child within the statutory definition and that adequate public facilities are not available to provide for the child’s educational needs. * * * While the issuance of the certificate would be helpful to the court, its absence does not preclude the court from proceeding.”
An examination of the language of the Family Court Act and the Education Law show the correctness of Judge Moskoff’s holding. Section 232 (subd. [a], par. [1]) of the Family Court Act states that ‘ ‘ the court may accept the certificate of the state department of education as to his [the child’s] educational needs.” The point seems to be that the court could reject such certification, but that language would also seem to imply that such certification is not mandatory.
Comparison to other sections of the Family Court Act and the Education Law would seem to lend further credence to the lack *1016 of necessity for certification by the State that the child is physically handicapped. As stated above, section 115 of the Family Court Act indicates independent power of the Family Court to hear cases concerning physically handicapped children. Subdivision (b) of section 231 exemplifies an express requirement of certification other than by the Family Court alone: it requires a determination by “ an approved psychologist or psychiatrist (Italics supplied.) The Education Law also uses language that makes it clear that State certification is necessary for free public education under subdivision 1 of section 3201. Subdivision 1 of section 3208 allows this education only if the child is in “ proper mental and physical condition”. Subdivision 5 of section 3208 states that this determination be based upon an examination by “ a person or persons qualified by appropriate training and experience, in accordance with regulations of the state education department. The state education department shall designate persons having the required qualifications to make such mental or physical examination on behalf of any local school authorities, except that in a city having a population of one million or more the superintendent of schools shall designate such persons ”. More applicable is the language of section 4403 of the Education Law. After a Family Court orders the locality to provide funds for the child’s education, that locality may seek a certificate from the State Education Department to approve such request for reimbursement.
Logic would seem to bolster the argument against the necessity for the Family Court to make its order, because the State is not at that point obligated to pay for that child’s education. The order is solely an obligation upon the locality (and possibly the child’s parents) until it requests reimbursement under section 4403, There is no express language to the contrary in the Education Law or the Family Court Act.
Furthermore, insertion of reference to section 2581 of the Public Health Law in 1966 is an added indication against dependence upon certification by the State Department of Education. None of the definitions of ‘1 physically handicapped child” (Family Ct. Act, § 232; Education Law, § 4401, subd. 1; Public Health Law, § 2581, subd. 1) make any reference as to who determines the condition.
In the same manner, State certification of the educational facility would not appear to be mandatory for an order under section 232 (subd. [a], par. [1]) which states: “a suitable order may be made for the education of such child in its home, a hospital, or other suitable institution ”. Both the comparison *1017 of language in various sections and the logic of not requiring State certification when the State is not financially obligated would reinforce the argument against any requirement of State certification of the school, as long as the Family Court finds it “ suitable ”,
In the present case, since we have found that James is physically handicapped and that Harlyn School is qualified to provide special educational services for him, we hold that the Family Court does have the power to order the county to pay James’ tuition and transportation costs for the Harlyn School. Thus the City of New York is responsible for the 1972-1973 school year’s tuition of $3,500 and for continued transportation to and from the school.
Although we have held that there is no requirement that the State certify the Harlyn School in order for the Family Court to order the city to pay James’ tuition, it would be beneficial for the child and other handicapped children in need of special educational services, that the State inspect the school and certify it if it meets State standards. Certification would make applications for State support less burdensome for parents, and it would carry out the design of the Education Law’s provisions for a sharing of the financial burden of handicapped children’s educations. (See Education Law, §§ 4403, 4405, 4407.) Furthermore, such inspection will aid this court to ascertain the quality of the educational program at Harlyn School.
The Family Court has the power to order the State Commissioner of Education to cause the inspection of the Harlyn School forthwith, pursuant to section 255 of the Family Court Act, and this is so ordered. In the case of Matter of Walker v. Foster (69 Misc 2d 400) Judge Gabtensteih of the Family Court ordered the Superintendent of Education to transfer two children from one school to another, pursuant to section 255. Although the parents had obtained their daughter’s admission to P. S. 58 by means of a false address, the court noted that the superintendent had the power to allow pupils to attend a school outside their assigned districts. The Appellate Division in Matter of Naima C. (39 A D 2d 964) reversed the order of the Family Court, holding that it had exceeded its jurisdiction, and that what was actually being done was the conversion of proceeding into a CPLR article 78 proceeding in the nature of mandamus, which can only be brought in the Supreme Court. (CPLR 7804, subd. [b].) Eighteen days prior to this reversal, June 8, 1972, the State Legislature amended section 255 (L. 1972, ch. 1016, § 3, eff. July 1, 1972) to provide greater detail assistance *1018 and co-operation of agencies and institutions as shall be within their legal authority as they may be required to furnish.
The Commissioner of Education has the “legal authority” to supervene his own regulations ; therefore, the Family Court may order it: “to render such information, assistance and cooperation as shall be within its legal authority concerning a child who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act.” (Family Ct. Act, § 255.)
The relief sought pursuant to section 232 of the Family Court Act is therefore granted.