Joseph A. Doran, J.
This is a proceeding, pursuant to section 232 of the Family Court Act, for an order in the sum of $9,160 to cover the educational needs (tuition and maintenance) of a handicapped child for the 1972-73 school year, and making “ such amount a charge upon the appropriate governmental body or bodies.”
The petitioner is the New York City Commissioner of Social Services. The child in question was born on January 9, 196Í, and came into the petitioner’s custody on August 25, 1961. No issue is raised as to his handicapped .status or in respect to the ability of parents or other person having legal responsibility to pay for his necessary education. He is now at the Thomas E. Shannon Boy’s Home in New Jersey, approved by the New Jersey Department of Institutions and Agencies to accept children for residential treatment and education. There is also no dispute as to the reasonableness of its charges.
The main thrust of this proceeding is to enable the City of New York to obtain from the State of New York[1] one-half *533 contribution towards the cost of special education of the child in the out-of-State school, according to the allocation formula provided by statute (see Education Law, § 4403). Basically, it is a contest between two fiscal giants as to whose budget shall bear the burden of such expense. It is all taxpayers’ money in any view of the matter.
The New York City Board of Education does not have “ an adequate public facility for this schizophrenic 12 year old”, and further says that “ he is not eligible for funding under section 4407 of the Education Law since he is not attending a school eligible for such contracting.”
The State Education Department takes a position as follows: “ Subdivision 1 of section 4403 of the Education Law provides, in material part, that the State Education Department shall have the power and duty to provide, within the limits of the appropriations made therefor * * * maintenance and tuition in * * * special and technical schools, for handicapped children in whole or in part from funds of the Department, when not otherwise provided by parents, guardians, local authorities or other sources, public or private. Pursuant to the provisions of subdivision 3 of section 40 of the State Finance Law, the appropriation to the Education Department for this purpose for the State fiscal year which began on April 1, 1972, ceased at the close of that fiscal year on March 31, 1973, unless a liability had been incurred prior to that date, in which case payment could be made on or before the next succeeding 15th day of September.
‘ ‘ In the instant matter, no encumbrance of funds was made prior to March 31, 1973. Therefore, the Commissioner of Education could not issue an HC-5 [certificate of approval for State aid] should the Court grant relief sought in the petition with regard to the attendance of the above named child at the Thomas E. Shannon Boys Home for the 1972-73 school year * * *
“ In addition, the Education Department is unable to make a proper evaluation of this petition for tuition and maintenance ■since it has no information or knowledge regarding the facilities and programs available at the Thomas E. Shannon Boys Home, Burlington, New Jersey. It is respectfully submitted that the Court consider the question of whether there is an adequate facility available to meet the educational needs of this child within the State of New York (Matter of Leitner, 38 A D 2d 554).”
*534 In the Leitner case thus cited, the needs of the child were being supplied by a special school in Rhode Island at a cost of approxi.mately $12,500 a year. The Appellate Division reversed a Family Court order assessing the total cost against the local governmental body, and remanded the proceeding for new hearing (on notice to specified governmental authorities) at which ‘ ‘ testimony should be taken with reference to the availability -and expenses of .suitable educational facilities within the State of New York capable of providing for the educational needs of the handicapped child in question, with attention given to section .4403 (subds. 1, 2) and section 4407 of the Education Law ” (Matter of Leitner, 38 A D 2d 554, supra). The implication is clear. Before New York taxpayer moneys are to be sent out of .State for the instructional needs of a handicapped child, it should be shown to the satisfaction of the court that the Empire State is unable to provide for him in a school that meets the standards of its own Education Department and subject to its continuing jurisdiction and supervision. Nevertheless, on a later appeal in the same case the expenses for special education of the child in the out-of-State school were approved and assessed against the local unit of government in the first instance, to be reimbursed by the State of New York to the extent of one half of its payments (Matter of Leitner, 40 A D 2d 38).[2]
It seems appropriate to say that the State of New York has fulfilled the mandate of its Constitution ‘‘ for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated ” (N. Y. Const., art. XI, § 1). The New York City school system is part of it. Unfortunately, some children are not able to take advantage of the “free common schools” because of their limitations and handicapped condition. Not all are equally educable. This is a regrettable fact of life that must be faced, but the consequence is not the fault of government on .any level. The State of New York has not ignored the plight of these children or defaulted in any societal duty or obligation .towards them. Their educational needs are a matter of concern and, therefore, the subject *535 of statutory provision and regulation (see Education Law, art. 89, § 4401 et seq.; Family Ct. Act, §§ 115, 232, 234).
However, the State Education Department is simply posturing here when it asks the court to “ consider ” whether there is an adequate facility available within the State of New York to meet the educational requirements of the child in question. The City of New York need only establish — as the Board of Education has done —that he cannot be accommodated in the local school system. A school able to provide for him has been found in New Jersey. If the State of New York — through the Education Department — does not know whether there is an approved school somewhere within the 57 counties outside the City of New York, no one else can be expected to know. At any rate, the court is in no position to “ consider ” the existence of such school, unless the 'State Education Department comes forward with proof of its availability. In short, therefore, it is enough prima facie that the New York City Board of Education certifies its inability to provide the necessary education that is now being supplied for this handicapped child in an out-of-State institution. On familiar principles, the State Education Department has the burden of going forward with evidence that a suitable and approved educational facility is available in the State of New York to satisfy his needs. It has failed to sustain this burden, nor has it asked for the opportunity. And who should know better than the State Education Department?[3]
This does not help the City of New York in its effort to obtain one-half contribution from the State of New York under the statutory formula for sharing the expense of special education of this handicapped child (Education Law, § 4403). The Commissioner of Education has already advised that he is unable to issue an HC-5 [certificate of approval for State aid] in this case. Hence, as pointed put in Matter of Leitner (40 A D 2d 38, 41, supra): “ If State Education Department approval of a special education order pursuant to section 232 of the Family Court Act is not given, ‘ the county or the proper subdivision thereof ’ [City of New York here] (id., subd. [a], par. [1]) remains liable for the entire cost.” The court, *536 therefore, has no choice as to allocation of cost in the circumstances where, as here, the Commissioner of Education has refused the necessary administrative approval. Accordingly, it authorizes payment of $9,160 for the educational instruction of the handicapped child at the 'Shannon Boy’s Home in New Jersey as requested by the New York City Commissioner of Social Services, but assesses the same against the City of New York in its entirety (see Matter of Dara L., 73 Misc 2d 723).
It does not mean that the City of New York is without remedy here. The function of the Commissioner of Education in respect to approval of State aid for a handicapped child has been described as “procedural and mechanical only after an order is made by this court ” (Matter of Michael B., 73 Misc 2d 339, 342). If he adheres to his announced position in this case and continues to withhold a certificate of approval (HC-5), the avenue of recourse is a proper proceeding elsewhere under CPLR article 78 to review any arbitrary exercise of administrative power. (See Matter of Dara L., supra; Matter of Michael B., supra; Matter of Daber, 71 Misc 2d 303; Matter of Serotte v. New York State Educ. Dept., 63 Misc 2d 999.) This may involve circuity of action or “duplication of effort” as noted in Matter of Apple (73 Misc 2d 553, 555), but it is beyond the limited jurisdiction of this court to alleviate .the procedural complexities of the situation. It is a becoming exercise of judicial restraint simply to follow or apply the law as it is written and interpreted by appellate authority (see Matter of Leitner, 40 A D 2d 38, 41, supra). Any desirable change — substantive or procedural — is better left to the legislative wisdom and power of amendment.

. The Attorney-General did not appear at the hearing in this ease.

. In Leitner, however, it appears that the State Commissioner of Education approved the order of the Family Court and issued an HC-5 [certificate of approval for State aid], which had the effect of assuming on behalf of the State of New York one half of the financial burden initially imposed on the local governmental body (see Matter of Leitner, 40 A D 2d 38, 39, 41).

. This court is not indifferent to the free expenditure of New York moneys to an out-of-State school in this or similar ease — especially where the sky can be the limit at the expense of our already heavily burdened taxpayers. There are — or should be — reasonable limitations, and also careful consideration whether an in-State school is available for the purpose. This takes nothing from the Shannon Boy’s Home in New Jersey any more than the court in the first Leitner case (Matter of Leitner, 38 A D 2d 554, supra) intended to deny the special expertise of the Harmony Hills School in Rhode Island.