Felice K. Shea, J.
In this proceeding pursuant to section 232 of the Family Court Act, petitioner seeks an order directing the City of New York to pay school tuition costs for her emotionally handicapped son. Notice was served upon the Attorney-General and the Commissioner of Education of the State of New York, neither of whom has appeared.
The petition alleges that Milton, age 13, is a physically handicapped child as defined in section 232 of the Family Court Act in that he suffers from "Overanxious reaction of childhood, severe, with borderline features.” A certificate in support of the petition, signed by a physician and a psychologist, states that Milton cannot attend public school because he is "a severely restless boy who presents with a very active frightening and intrusive fantasy life which interferes with his ability to attend to his academic tasks.” The Board of Education of the City of New York has certified that it is unable to provide an adequate educational facility for Milton. The State Education Department has certified the private day school Milton attends to be a suitable special educational facility, and it has approved State aid for part of Milton’s tuition.[1]
*577 The city, respondent herein, has moved to dismiss the petition for lack of subject matter jurisdiction on the ground that section 232 of the Family Court Act covers only children with physical handicaps. The court must determine whether section 232 of the Family Court Act provides for special education at public expense for emotionally handicapped children and whether, if it does not, it denies Milton his constitutional rights to equal protection of the laws and to public education.
Section 232 of the Family Court Act provides, in pertinent part, as follows:
"(a) The family court has jurisdiction over physically handicapped children.
"(1) * * * Whenever a child within the jurisdiction of the court * * * appears to the court to be in need of special educational training, including transportation, tuition or maintenance * * * a suitable order may be made for the education of such child in its home, a hospital, or other suitable institution, and the expenses thereof, when approved by the court and duly audited, shall be a charge upon the county or the proper subdivision thereof * * *
"(c) 'Physically handicapped child’ means a person under twenty-one years of age who, by reason of a physical defect or infirmity, whether congenital or acquired by accident, injury or disease, is or may be expected to be totally or partially incapacitated for education or for remunerative occupation, as provided in the education law, or is physically handicapped, as provided in section two thousand five hundred eighty-one of the public health law.”
New York’s State Constitution mandates that the "legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated.” (NY Const, art XI, § 1.) The Legislature has provided that "each minor from six to sixteen years of age shall attend upon full time instruction” (Education Law, § 3205, subd 1, par a) and that local boards of education must establish free schools, home teaching or special classes "for physically or mentally handicapped or delinquent children.” (Education Law, § 2554, subds 9, 18.)
Article 89 of the Education Law provides for the education of children who are physically and mentally handicapped, emotionally disturbed, delinquent and non-English-speaking. *578 Article 89 (§ 4401, subd 1) defines a handicapped child as "one who, because of mental, physical or emotional reasons, cannot be educated in regular classes but can benefit by special services and programs” (emphasis supplied). Section 4402 of the Education Law sets forth the duties of the State Education Department, and section 4404 details the obligations of school districts to provide suitable education for handicapped children. Section 4403 of the Education Law relates to Family Court proceedings and provides for certification by the State Commissioner of Education of approved Family Court orders and for allocation of the costs of Family Court orders between the locality and the State.
It is evident that the Family Court Act and the Education Law are related and must be read together. Subdivision (c) of section 232 of the Family Court Act refers to the Education Law, and section 4403 of the Education Law refers to proceedings in the Family Court.[2] Until 1967, section 4401 of the Education Law defined physically handicapped children in words identical to those in subdivision (c) of section 232 of the Family Court Act. In 1967, section 4401 of the Education Law was amended (L 1967, ch 786, § 3) to eliminate the distinction between physical and other handicaps and to make explicit that the definition encompassed children handicapped for "emotional reasons”. The purpose was to provide "a simple definition which [was] intended to cover all handicaps, whether physical, mental or emotional”.[3] At the same time, the qualifying word "physically” was deleted before the word "handicapped” in section 4403 of the Education Law which relates to Family Court proceedings. (L 1967, ch 786, § 3.)
It cannot be doubted that the broadened definition of "handicapped” was conceived by the Legislature as applying to proceedings pursuant to section 232 of the Family Court Act. A memorandum of the State Department of Education in support of the 1967 amendment states: "Section 4403, procedure through family court now applicable to physically handicapped children only, is expanded to include all 'handicapped children’ as defined in the bill.” (1967 McKinney’s Session Laws of NY, pp 1498, 1499.)
We are faced here with what must be assumed to be an inadvertent failure on the part of the Legislature to make *579 changes in the Family Court Act to conform to the 1967 amendments in the Education Law.[4] The court must endeavor to interpret the statute in a way that will sustain its constitutionality and effectuate the intent of the Legislature. "In construing statutory provisions, the spirit and purpose of the statute and objectives sought to be accomplished by the legislature must be borne in mind.” (Matter of New York Post Corp. v Leibowitz, 2 NY2d 677, 685.) "[Lateral meanings of words are [not] to be * * * suffered to defeat the general purpose and manifest policy intended to be promoted”. (Matter of Capone v Weaver, 6 NY2d 307, 309.)
The court holds that the definition of "handicapped child” in subdivision 1 of section 4401 of the Education Law amplifies the definition of "physically handicapped child” in subdivision (c) of section 232 of the Family Court Act and is applicable to this proceeding. The words "as provided in the education law” in subdivision (c) of section 232 can be viewed as meaning "as defined in the education law”, particularly since before section 4401 of the Education Law was amended in 1967, the two definitions were the same. The last clause of subdivision (c) of section 232 of the Family Court Act, which alternatively defines physically handicapped child in terms of section 2581 of the Public Health Law supports this analysis.[5]
If subdivision (c) of section 232 of the Family Court Act is interpreted to exclude an emotionally handicapped child, for whom education is not available in the public school, from special schooling at public expense, it is in conflict with his right to public education under the New York State Constitution and his right to equal protection of the laws as guaranteed by section 11 of article I of the Constitution of the State of New York and the Fourteenth Amendment to the Constitution of the United States.
*580 Although the right to education is not guaranteed by the United States Constitution (San Antonio School Dist. v Rodriguez, 411 US 1), when a State undertakes to provide free education to all students, it must "recognize a student’s legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause” (Goss v Lopez, 419 US 565, 574), and it may not discriminate against emotionally handicapped children. See Brown v Board of Educ., 347 US 483; Reid v Board of Educ. of City of N. Y., 453 F2d 238; Mills v Board of Educ. of D. C., 348 F Supp 866; Pennsylvania Assn. for Retarded Children v Commonwealth of Pennsylvania, 334 F Supp 1257; but cf. New York State Assn. for Retarded Children v Rockefeller, 357 F Supp 752, 762-764.)
The Corporation Counsel, on behalf of New York City, suggests that policy considerations based on complexity of proof and danger of misrepresentation provide a basis for distinguishing between emotionally handicapped children and children with physical handicaps. No authorities are cited to show that such problems exist or that the Legislature anticipated them. Rules of law based upon difficulty in ascertaining the truth are not regarded with favor. (Battalla v State of New York, 10 NY2d 237; Ferrara v Galluchio, 5 NY2d 16; Comstock v Wilson, 257 NY 231.) This court will not infer a rationale based upon convenience which would be contrary to justice and inconsistent with legislative intent.
In the past, the courts of this State have ordered the payment of tuition costs for children with handicaps similar to those of the child herein, by the expedient of classifying the child as physically handicapped as defined in subdivision (c) of section 232 of the Family Court Act. (Matter of Jetty, 79 Misc 2d 198 [mild mental retardation, serious behavior disturbance due to disruptive home environment, adjustment reaction to adolescence]; Matter of McDonald, 76 Misc 2d 532 [schizophrenia]; Matter of James B., 75 Misc 2d 1012 [schizophrenia, childhood type with some autistic components, hyperactivity, occasional destructiveness, inability to co-operate and communicate, emotional difficulties]; Matter of David H., 72 Misc 2d 59 [schizophrenia of childhood, evidenced by a short attention span, inability to conform to classroom routines, hyperactivity and distractibility, auditory hallucinations, fears and phobias and a thinking disorder].)
In Diana L. v State of New York (70 Misc 2d 660), a brain-injured child was enrolled in special educational classes main *581 tained by a Board of Co-operative Educational Services in Westchester County, which the Family Court deemed adequate to meet the needs of children with similar physical handicaps. The court found that (pp 662-663) "[b]ecause of her overlying emotional problem, however, this child [was] not receiving any appreciable benefit from this special educational program.” The court (p 663) rejected respondent’s argument that the need for private schooling, arising "solely because of an emotional problem which has its genesis in the home” should not be at public expense, and approved tuition and maintenance charges at a private residential facility.
In Matter of Kirkpatrick (77 Misc 2d 646), congenital learning disabilities of dislexia and disagraphia were intertwined with an emotional problem; the emotional disturbance and concomitant behavioral problems were held to require special educational training at a private school.
In these, and in many unreported cases, the Family Court is concerned with a problem that has medical as well as legal components. Advances in brain biochemistry and physiology have blurred the distinctions between physical and emotional handicap. "Before penicillin was developed * * * syphilis was treated as a mental disorder. Parkinson’s disease, once also considered a mental disorder, has since proven to be an organic brain disorder * * * schizophrenia is treated with chlorpromozine * * * and manic depression with Lithium * * * [There are] biochemists and psychopharmacologists [who believe] that behind every crooked thought is a crooked molecule.” (Bleecker, The Psychiatrist as Druggist, Harper’s, Dec. 1975, p 117.)
Since the causes of inability to learn in a normal school setting can be multiple, various, and impossible to separate, the Legislature wisely decided to abolish meaningless distinctions as to how the disability arose and to make it clear, in the Education Law, that all handicapped children are to be treated similarly. By reading subdivision (c) of section 232 of the Family Court Act in conformity with the Education Law, the Family Court will be able to focus on the real issues instead of straining to find an organic infirmity with which to bring the child’s handicap within the statutory definition.
The court is aware that two Family Court decisions in the Second Department have articulated a conflicting view of the scope of subdivision (c) of section 232. In Matter of Joseph S. (81 Misc 2d 152, 155), the court interpreted subdivision (c) of *582 section 232 of the Family Court Act as requiring "a showing of some degree of physical impairment, however slight.” The petition for tuition costs was denied with leave to reapply upon a showing of physical handicap and upon certification that the board of education could not provide a suitable educational facility for the child. Upon rehearing, the petition was granted. (Family Court, Queens County, Docket #H2281/ 75.)
In Matter of Mecca (82 Misc 2d 497, 499), the court denied the petition on the ground that "there does not appear to be a basis for recognizing Robert Mecca as other than a serious discipline problem to his parents and teachers.” The opinion cited with approval the narrow interpretation set out in Matter of Joseph S. (supra), and then begged the crucial question by holding that whether the child could be educated in the public schools need be considered only after his handicap under subdivision (c) of section 232 of the Family Court Act had been established.[6] In neither Mecca (supra), nor in Joseph S. (supra) had the board of education certified its inability to educate the child within the public school system, and both cases are thus distinguishable.
This court must disagree with any interpretation of subdivision (c) of section 232 of the Family Court Act which deprives a handicapped child of a public education. If the board of education in New York City cannot educate Milton, as it has certified, then Milton is entitled to be educated at a suitable institution such as the one in which he is enrolled.
Nor should Milton and his family be relegated to a CPLR article 78 proceeding against the City of New York, followed by an action by the city against the State, in order to obtain the benefits available to other handicapped children by petition in the Family Court.[7] The Corporation Counsel argues *583 that such parallel remedy is available to children who are entitled to special education, but whose handicap does not fit into the narrow definition enunciated in Matter of Joseph S. (supra).
This court rejects such a cumbersome and expensive solution to the problem. The Family Court is the proper forum for all handicapped children who seek funds for special education. "The Family Court has been charged with a special responsibility for the lives and well-being of the children of this State. It has been given jurisdiction over physically handicapped children * * * It is the Family Court which each and every day intervenes in the lives of countless children toward the end that they may be permitted to grow and develop into healthy, useful and responsible adults. It is not unreasonable to assume that the Legislature, in enacting section 232 of the Family Court Act vested broad discretion in the Family Court, secure in the belief that this court which is so intimately bound up with the lives of children will exercise its discretion as a concerned and loving parent, wisely and out of an abundance of experience.” (Matter of Richard C., 75 Misc 2d 517, 519. Accord, Matter of Anthony W., 74 Misc 2d 380; Matter of Apple, 73 Misc 2d 553.)
The court holds that it has subject matter jurisdiction to adjudicate the rights of this emotionally handicapped child.
Respondent’s motion is denied.

. Under section 4407 of the Education Law, commonly known as the Greenberg Law, the State may reimburse the child’s school for tuition expenses up to an annual maximum of $2,500. No question of parental ability to reimburse for educational expenses arises where, as here, the educational facility is nonresidential and the child is maintained at home. (Matter of Logel, 78 Misc 2d 394; Matter of Kirschner, 74 Misc 2d 20; Matter of Downey, 72 Misc 2d 772; accord, Matter of Claire, 44 AD2d 407, mot for lv to app dsmd 35 NY2d 706.)

. See, also, Committee Comments following section 232 of the Family Court Act (McKinney’s Cons Laws of NY, Book 29A, p 137).

. Memorandum of Senator J. Speno, NY Legis Ann, 1967, p 130.

. The courts have struggled repeatedly with problems caused by failure on the part of the Legislature to resolve ambiguities and inconsistencies in the Family Court Act and the Education Law sections dealing with special education for handicapped children. The present statutory scheme has been criticized as a "mumbo jumbo, unconsolidated and inartistically promulgated” (Matter of Daber, 71 Misc 2d 303) and as "at best, cumbersome, and at worst, unclear and unnecessarily complex.” (Matter of Leitner, 40 AD2d 38, 42.) See, also, Oughterson Family Court Jurisdiction, 12 Buff L Rev 467, 486, n 81 where legislative review was recommended as long ago as 1963.

. Section 2581 of the Public Health Law defines physically handicapped child as a person under 21 handicapped "by reason of a defect or disability” without specifying that there need be a physical defect or disability. In view of this court’s conclusion that the Education Law definition of handicap is applicable to this proceeding, the Public Health Law definition need not be further considered.

. Since subdivision 1 of section 4401 of the Education Law defines "handicapped child” as one who cannot be educated in regular classes and subdivision (c) of section 232 of the Family Court Act defines "physically handicapped child” in part as one who is or may be expected to be totally or partially incapacitated for education, it would appear that the issue of inability to be educated in the regular public school system, whether proved by certification of the Board of Education or otherwise, is the essence of the matter.

. Under section 4403 of the Education Law, the city is entitled to reimbursement from New York State for educational benefits approved by the State Commissioner of Education, and the Family Court has held that it may order reimbursement from the State. (Matter of Anthony W., 74 Misc 2d 380; Matter of Apple, 73 Misc 2d 553; cf. Matter of Robert B. v State of New York, 80 Misc 2d 647.)