In the Matter of WARREN A., A Person Alleged to be a Handicapped Child, Appellant.

Second Department, July 12, 1976

*William E. Hellerstein* and *Charles Schinitsky (Russell I. Lynn* and *Joseph Shuter* of counsel), for appellant.

*W. Bernard Richland, Corporation Counsel (Leonard Koerner* and *L. Kevin Sheridan* of counsel), for respondent.

HOPKINS, Acting P. J. Warren A. is an eight-year-old child suffering from "borderline childhood schizophrenia". The petitioner, his mother, filed a petition in the Family Court, Queens County, stating that on account of his handicap he required special education in the Adams School for the 1975-1976 school year; the petition attached a letter from the Board of Education of the City of New York certifying its inability to educate the child within the public school system. The petition sought an order directing the City of New York to pay $5,000, the difference between $7,500, the tuition at the Adams School, and $2,500, the amount in aid received under section 4407 of the Education Law.

The Family Court dismissed the petition, holding that the "diagnosis alleged is not a physical handicap within the meaning of statute." As the Family Court refused to grant an evidentiary hearing on the petition, we construe its disposition to represent a determination that a child suffering from a mental disability or disease, such as schizophrenia, is not handicapped within a fair interpretation of the statutes. Indeed, the interpretation of the Family Court herein followed a prior and more extended analysis of the statutory scheme, in which it was concluded that "it is the legislative intent to provide special educational services under section 232 [of the Family Court Act] only to those children who are physically handicapped, i.e., handicapped 'by reason of a physical defect or infirmity' (Family Ct. Act, § 232, subd. [c])" *(Matter of Joseph S.,* 81 Misc 2d 152, 156). The Corporation Counsel does not appear to have opposed the petitioner's application in the Family Court and does not oppose the application on this appeal.

We reverse and remand for a hearing. Read together, the statutory provisions invest the Family Court with power to grant appropriate financial aid to mentally and emotionally disturbed children for their education. The petition alleges grounds for relief on its face within the authority of the statutes and should not have been summarily dismissed.

Whether Warren A. is mentally or emotionally disturbed or requires the special education to be furnished by the Adams School are subjects to be investigated at a hearing.

We deal with several statutes which do not form a homogeneous whole, causing difficulties in construction. We have already remarked, in another context, that "the statutory scheme for the ordering of special educational services for a handicapped child through the Family Court * * * is, at best, cumbersome, and at worst, unclear and unnecessarily complex", and that "the definitional dichotomy between section 232 of the Family Court Act and section 4403 of the Education Law has resulted, not in a well-integrated legislative scheme for dealing with the special educational needs of handicapped children, but rather in the existence of isolated statutes dealing with the same subject matter" *(Matter of Leitner [County of Westchester-Union Free School Dist. No. 4, Town of Greenburgh],* 40 AD2d 38, 42). We must undertake, therefore, to put the statutes into perspective, understanding that the ultimate purpose of the construction of statutes is to reach the legislative intent, and heeding the felicitous words of Judge LEARNED HAND, that "the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create" *(Helvering v Gregory,* 69 F2d 809, 810-811; and, see, *New York State School Bus Operators Assn. v County of Nassau,* 39 NY2d 638).

Subdivision (c) of section 232 of the Family Court Act (as amd. by L 1973, ch 195) defines a "physically handicapped child" as one "who, by reason of a physical defect or infirmity, whether congenital or acquired by accident, injury or disease, is or may be expected to be totally or partially incapacitated for education or for remunerative occupation, *as provided in the education law,* or is physically handicapped as provided in section two thousand five hundred eighty-one of the public health law" (emphasis supplied). Thus, the language of the statute indicates expressly that it must be read in conjunction with the Education Law and the Public Health Law. Moreover, the language indicates that, for the purpose of educational aid, the test of a physical handicap is that it may arise from an "accident, injury or disease * * * as provided in the education law", as distinguished from the test provided for medical aid under the Public Health Law, which, in its

context, by describing organic diseases as examples, limits its definition to physical rather than mental infirmities (Public Health Law, § 2581, subd 1).[1] Indeed, the Education Law states clearly that a "handicapped child", without reference to a "physical" handicap, "is one who, because of mental, physical or emotional reasons, cannot be educated in regular classes" (Education Law, § 4401, subd 1).[2] In point of fact, the quoted section appears in article 89 of the Education Law bearing the descriptive headnote "Physically and Mentally Handicapped, Emotionally Disturbed, Delinquent and Non-English Speaking Children".

Significantly, subdivision 1 of section 4403 of the Education Law, which recognizes the power of the Family Court to issue an order providing for the education of a handicapped child, used the words "physically handicapped child" before 1967 to define the beneficiaries within its language; in 1967 the section was amended by omitting the word "physically" preceding "handicapped" (L 1967, ch 786). That amendment was supported by a memorandum of the State Department of Education which stated that the purpose of the amendment was to include within the definition of a "handicapped child" those children "now defined as 'emotionally disturbed'" and that the "procedure through [the] family court now applicable to physically handicapped children only, is expanded to include all 'handicapped children' as defined in the bill" (McKinney's Session Laws of 1967, pp 1498, 1499). When, therefore, section 232 of the Family Court Act was amended in 1973 (L 1973, ch 195), the Legislature must be presumed to have known that the existing reach of the Education Law included

---

1. Subdivision 1 of section 2581 of the Public Health Law reads in full as follows: "'Physically handicapped children' means any persons under twenty-one years of age who are handicapped by reason of a defect or disability, whether congenital or acquired by accident, injury, or disease, or who are suffering from long-term disease, including, but without limiting the generality of the foregoing, cystic fibrosis, muscular dystrophy, nephrosis, rheumatic fever and rheumatic heart disease, blood dyscrasies, cancer, brain injured, and chronic asthma, or from any disease or condition likely to result in a handicap in the absence of treatment, provided, however, no child shall be deprived of a service under the provisions of this chapter solely because of the degree of mental retardation."

2. Subdivision 1 of section 4401 of the Education Law reads in full as follows: "A 'handicapped child' is one who, because of mental, physical or emotional reasons, cannot be educated in regular classes but can benefit by special services and programs to include, but not limited to, transportation, the payment of tuition to boards of cooperative educational services and public school districts, home teaching, special classes, special teachers, and resource rooms."

within the class of a "handicapped child" those children suffering from mental and emotional infirmities (cf. *American Bank v Goss,* 236 NY 488, 493; *City of New York v Maltbie,* 274 NY 90, 97; *Buduson v Curtis,* 285 App Div 517, 519, affd 309 NY 879).

Looking at the statutory scheme as a whole, as we are bound to do, we think that the Family Court has the power to direct that educational services be rendered to a child under mental or emotional infirmity, such as childhood schizophrenia. Otherwise, we give no meaning to the reference to the Education Law contained in section 232 of the Family Court Act and disregard the legislative intent reflected by the 1967 and 1973 amendments to both statutes. We should not ascribe to the Legislature an intent which renders the language of the statute surplusage and without significance.

Other decisions in the Family Court construe the statutes to the same effect as we do (e.g. *Matter of Kaye,* 84 Misc 2d 569; *Matter of David H.,* 72 Misc 2d 59; *Matter of James B.,* 75 Misc 2d 1012; contra, *Matter of Joseph S.,* 81 Misc 2d 152, *supra; Matter of Mecca,* 82 Misc 2d 497). In coming to this conclusion, we do not enter the thorny thicket of deciding whether childhood schizophrenia is an outgrowth of an organic disorder; the medical literature is hardly conclusive.[3] Rather, we hold that the Family Court is empowered to issue orders, in appropriate cases, for the education of children having mental and emotional disorders, whether organically based or not.

We are accordingly remanding the proceeding to the Family Court for a hearing for all purposes to determine whether this is an appropriate case for the granting of the relief requested. We note that the diagnosis alleged is that of "borderline childhood schizophrenia", and that a report of one examining physician found no evidence of psychopathology in the child, but that he appeared a normal boy, restless because of an unstimulating school situation. At the hearing, these apparent contradictions may be fully inquired into.

The order of the Family Court should consequently be reversed, the petition reinstated and a hearing on the petition ordered.

---

**3.** Some authorities consider childhood schizophrenia to be differentiated from adult schizophrenia, resulting in certain cases from genetic or neurological dysfunction (2 American Handbook of Psychiatry [2d ed, rev 1], ch 5, pp 85-106).

MARTUSCELLO, MARGETT, RABIN and HAWKINS, JJ., concur.

Order of the Family Court, Queens County, dated February 24, 1976, reversed, without costs or disbursements, petition reinstated and proceeding remitted to the said court for further proceedings in accordance with the opinion herein of Mr. Justice HOPKINS.