Leon W. Paeon, J.
Petitioner, the mother of Hilary M., concededly a physically handicapped child, seeks an order for the education of her child under section 4403 of the Education Law or, in the alternative, under section 232 of the Family Court Act..
Hilary, now almost 15 years old, is a severe brain-damaged child who has been handicapped since birth because of a central nervous disfunction with cerebral dysrythmia and inability or severe limitations in capacity to form meaningful, effective relationships. She had attended the St. Joseph’s School for Exceptional Children in Dunkirk, New York, since September, 1967, and for the school years 1967-1968, 1968-1969 and 1969-1970, the State Education Department provided financial assistance for her pursuant to section 4407 of the Education Law. Application for aid under section 4407 of the Education Law was approved by Ernest H. Hoeldtke, the District Superintendent of Schools of the First Supervisory District of Erie County, for each of those years, but he refused to approve a similar application under section 4407 for the 1970-1971 school year on the basis that a suitable class for Hilary was available through the BOCES program in her school district.
The salient facts covering the present application for educational assistance are as follows: On August 3Í, 1971, a petition accompanied by supporting documents was filed in this court wherein the petitioner sought an order for the education of her physically handicapped child pursuant to the provisions of section 4403 of the Education Law.
Also filed with said petition was- Form HC-3 of the New York State Division for Handicapped Children which contained the recommendations of Doctor Dorothy Sail Rosenbaum, an independent school psychologist and Doctor Bernard Eisenberg, both of whom said: ‘ ‘ Hilary is a severe brain damaged child *515 with, mental retardation. In addition, she demonstrates the anxieties which overlay her neurological deficits.”
In addition, they stated that: “ Hilary should not be subjected to ‘ normal ’ school experience.”
In answer to a letter from the Clerk of this court requesting Superintendent Hoeldtke to execute Form HC-3 if he intended to approve the application or, if he did not intend to approve, to so indicate and return the form to the court, Superintendent Hoeldtke replied that: “ We have reviewed this case on several occasions in the past. Our staff advises me that we have a program for this child and the parents have been so advised. For this reason we do not feel we can possibly approve a Court Order.”
Petitioner contended at the hearing that Hilary needs the structured 24-hour-a-day basis program which the St. Joseph’s School conducts; that she has greatly progressed since her attendance there, and that she has not only learned to read and write, but has developed more self-assurance.
Doctor Dorothy Sail Rosenbaum, a clinical school psychologist, testified that she had examined Hilary about a year ago. She felt that the girl needed the protective, structured and routinized residential setting she was receiving at St. Joseph’s and should be continued there. She said that Hilary’s social and educational needs were inseparable, and that if she were removed from that institution at this time she would rapidly deteriorate.
Sister Grace Roll, the Administrator at St. Joseph’s School, téstified in considerable detail concerning the daily program at the school. She stated that the children participate not only in the classroom program but also in many activities after school hours, such as dancing, beauty programs and other activities of a social nature. She felt that Hilary had made considerable progress at the school and would continue to benefit if she were allowed to remain there.
Essentially, it is the respondent’s contention that there is an adequate BOCES program in a public school setting in Erie County which will meet this physically handicapped child’s educational needs.
Burchard Royce, a school psychologist employed by BOCES and assigned to the Cleveland' Hill School in Hilary’s school district, examined the child on April 25, 1969. He testified he gave her several of the usual tests but not a complete psychological examination and concluded that she could function adequately in a BOCES class for the edueable, mentally retarded *516 in 1969-1970. It was also his belief that if Hilary did attend á BOOKS class and it did not work that she would not be adversely affected.
He has not examined her since that time.
John W. Doran, the District Principal of the Cleveland Hill School in Hilary’s school district, testified that one of his functions is to make a .recommendation as to school placements for physically handicapped children and submit such recommendation to School Superintendent Hoeldtke. On June 13, 1969 he informed the petitioner by letter that he was recommending that Hilary be continued at St. Joseph’s School for another year. His letter stated, in part:
“ It is my opinion that your child would be hurt by moving her from St. Joseph’s to one of our own mentally retarded classes. The damage would not be in the program she would receive in school, but as you mentioned to me, in the great emotional upheaval that would result from her change of schools, and more especially her inability to associate constructively at home.
“ However, I believe that you should make plans now for Hilary to return to our BOCKS program next year. I believe it wise that she be talked to, and prepared in every way for this change.”
On May 18, 1970 he again wrote to the petitioner stating that they would expect Hilary to be enrolled in their BOCKS program beginning with the 1970-1971 school year; that he had no reason to believe that they should change from that plan; and that their BOCKS people and their psychologist recommend that plan.
Ernest H. Hoeldtke, the' District Superintendent of the First Supervisory School District and Executive Director of BOCES, testified thát in his opinion Hilary’s educational needs could be met in a BOCES program in her own school district. He felt that most emotionally disturbed children get along all right in the BÓCES program but conceded that some children are so emotionally disturbed that they cannot participate in a program in a school setting and have to be tutored at home.
He said that no extracurricular activities are provided in the BOCES program and said that he did not agree with Dr. Rosenbaum’s and Sister Grace Roll’s belief that such activities were necessary and essential for Hilary.
Dr. Zelda Kaye, Chief of the Bureau of Special Programs for the Physically Handicapped from the State Education Department’s Division for Handicapped Children, said that *517 after examining all available reports, it was her opinion that Hilary could adequately function in the proposed BOCES program. V
She would accept the fact, she said, that there are some children who cannot benefit from BOCES programs but felt such program should be tried in Hilary’s case.
She felt that extra curricular programs such as swimming, dancing and roller-skating — all available at St. Joseph’s — are important to the totql education of a physically handicapped child such as Hilary, but conceded that such programs would not be available to her in the proposed BOCES setting.
Eleanor McCabe, testified she was Coordinator of Programs in BOCES and also a licensed psychologist. Her function, she said, was to determine what programs are available and best-suited to particular students and then to recommend them for, placement to Superintendent Hoeldtke.
She said she was familiar with this particular matter and had examined various reports pertaining to Hilary and felt that the girl would benefit in a BOCES program.
She could not say whether the proposed BOCES program for Hilary would be better than the one at .St. Joseph’s but indicated that there are some children who just do not function in a public school situation.
She said she had not seen Hilary since 1969.
Jane Mulholland, Supervisor of Programs for the Educable and Trainable Children in BOCES, described the BOCES program at the school where Hilary would bfe assigned. She said Hilary would be attending special classes along with other handicapped children but would go to assemblies, gymnasium and the cafeteria with the regular students in the school.
She would express no opinion as to how Hilary would function in the BOCES program.
At the direction of the court Hilary was referred to the Family Court Psychiatric Clinic for a complete evaluation.
Clinical Psychologist, Michael Stott, during the course of his examination of Hilary, administered five tests and reported that she attained a full scale I.Q. of 69, indicating intellectual functioning in the mental defective category. He said she was quite different from the typically mentally retarded child in that her performance was quite erratic, and that she was almost totally devoid of any sense of social judgment, that is, common sense.
His further report, in part, stated:
“Hilary also has a very definite perceptual-motor handicap apparently due to cerebral disfunction. Her reproduction of *518 the Bender Visual Motor Grestalt Test designs reveals the characteristics of a brain-damaged child.
.* “ Hilary is able to read at the 6.0 grade level despite her handicap. This is no small accomplishment and much credit must be given to those who have been responsible for this girl’s education. It would appear unwise indeed to remove this severely handicapped girl from a program which is meeting her needs on a 24-hour-a-day basis and place her in a new situation which only provides daytime instruction.”
He further stated:
“ I doubt very much if Hilary could function emotionally in a special class at this time. The BOOBS classes are conducted in various high schools and the children in these classes do mix with student population. Hilary who has been quite sheltered and understandably so in the past, would be tortured indeed if she were at this point enrolled in a public school class. Certainly her anxiety would increase and one might see some frank expression of Hilary’s underlying feelings of hostility toward her environment which she even now views as threatening.
“ It would appear to this examiner to be in the best interest of Hilary if she were to remain at St. Joseph’s School for Exceptional Children. The program there is proving successful. Hilary has a bonafide handicap.”
Doctor Sebastian S. Fasanello, Court Psychiatrist, felt that even more important than the fact that the psychological testing indicated the girl was certainly functioning on a defective level were the many indications that she was also experiencing on. overwhelming degree of anxiety.
In part, Doctor Fasanello said:
“ It became quite evident that this child is not only handicapped in an intellectual way but she is even more seriously handicapped on an emotional basis. I believe that she at times lapses into a transient psychotic state and I would expect that under the normal stresses of an average school situation that she could in fact deteriorate very rapidly.
“ It appears that she has made a rather good adjustment at the St. Joseph’s School and has in fact progressed substantially. Hilary not only requires specialized teaching but also a specialized structure which cannot be obtained in the home situation. This is available at St. Joseph’s and I think this has been in great part responsible for this child’s maintaining her present level of functioning (as limited as it may be). To remove this child from that situation and place her in a sitúa *519 tion which cannot give her the additional structure that she needs would be a tremendous disservice to her. It is my recommendation that Hilary be allowed to remain at St. Joseph’s School.”
For the first three years of Hilary’s attendance at St. Josephus School both Superintendent Hoeldtke and the State Education Department must have concluded an appropriate ÍÜOCES program did not exist for the child, because for1, those years Superintendent Hoeldtke approved applications for financial assistance under section 4407 and the State Educátion Departs ment provided such assistance.
His refusal to approve petitioner’s application under see-< tion 4403 for the school year 1971-1972 must have been either because Hilary’s condition had improved so much that she could then be enrolled successfully in the BOCES program, or that the BOCES program, had improved so much over the past three years that it was then able to successfully handle physically handicapped children such as Hilary.
There is nothing in the record to indicate that either of those conditions has taken plaqe.
It seems evident to this court that Superintendent Hoeldtke’S refusal to approve the 4403 application must have been predicated almost exclusively on the psychological examination of Hilary made by the BOCES psychologist, Burchard Boyce, ott April 25, 1969, since there is no indication in the record that anyone from BOCES examined or even saw the child since that time.
The testimony of petitioner and her witnesses to the effect that Hilary must continue to attend a structured, routinized, 24-hour-a-day, residential school such as St. Joseph’s, and that the proposed BOCES program will not meet her needs, is overwhelming.
It is interesting to note that 'petitioner and her husband brought an article 78 proceeding against the State Commissioner of Education and. Superintendent Hoeldtke in 1972, seeking a judicial review of their denial of petitioner’s application for financial assistance for Hilary for the school year 1970-1971 pursuant to section 4407 of the Education Law.
Justice John L. Larkin (Sup. Ct., Albany County, Special Term, July 14, 1972),. in his opinion, stated, in part:
“It is the decision of this Court that the determination of the Commissioner in the instant matter is 1 purely arbitrary ’ and it is a decision that no reasonable man could reach such a result.
*520 “ There is absolutely no. showing here that the BOCES program has been expanded to meet the needs of children with mental and physical conditions such as Hilary’s, nor is there any showing that Hilary has improved to the extent that she could attend and is now eligible for a BOCES class.”
I must likewise conclude that the determination of Superintendent Hoeldtke, in the ease at bar, to refuse approval of the section 4403 petition was “purely arbitrary” and not based on fact.
I find the petitioner and her husband wholly unable to contribute toward the necessary special education of their child.
The petition is granted. The cost of the special educational services to be furnished Hilary is to be paid in the first instance by the County of Erie, which is to be reimbursed to the extent of one half thereof by the State of New York pursuant to section 4403 of the Education Law.