Edith Miller, J.
David M. was born on January 13, 1959. In 1966 he was first referred for professional attention to the New York City Board of Education Bureau of Child Guidance by the principal of his school for “ restless, aggressive, destructive and acting out behavior. ’ ’ As his behavior did not improve, David, subsequently was admitted on February 15, 1967 to the City Hospital at Elmhurst, Psychiatric Division. A diagnosis of childhood schizophrenia was made at that time. The youngster remained in the hospital, a short term city facility for psychiatric care, until May 5, 1967 when he was discharged to his family to be followed up in a mental hygiene clinic. However, his behavior deteriorated and he was then placed for the first time in Queens Children’s Hospital, a psychiatric facility operated by the State of New York for long term placement. The State hospital provided care and treatment for David from February 16, 1968 until November 15, 1971 when he was discharged to his family. Eight days after the State hospital had discharged him, it became necessary to readmit him once again to the City Hospital at Elmhurst, Psychiatric Division.
*493 In the past seven years, according to the youngster’s medical records, David has been admitted to the City Hospital at Elmhurst six times and to the Queens Children’s Hospital twice. In the past six years, the longest period of time that David has beein capable of maintenance outside of either the State or city psychiatric hospitals has been less than one month. In the past five years his I.Q. has dropped from 95 to 77 and the reading ability of this 1'5-year-old boy is second grade at best.' The current psychiatric diagnosis of this child as indicated by the Elmhurst City Hospital is Sl personality disorder, psychopathic type with minimal brain disfunction. There is an underlying schizophrenic process present.”
On January 25,1972, David was referred for the second time to Queens Children’s Hospital for long term psychiatric care and treatment. On May 23, 1973, David escaped from said facility (a feat he' had managed before because admittedly it is not a closed institution) and allegedly acting in concert with two others attempted to rob a man on the platform of a subway station. When the man resisted, he was thrown onto the tracks into the path of an oncoming train. These acts if done by an adult would have constituted the crimes of attempted murder, assault and robbery. David was 14 at the time and therefore was taken into custody as an alleged juvenile delinquent.
A juvenile delinquency petition was subsequently filed in Family Court. The Judge then sitting, recognizing that David was a patient in a mental hospital, referred him back to the hospital where he remained until the hospital discharged him on October 17, 1978 to Family Court for hearing on the juvenile delinquency petition. The youngster was then remanded to Spofford Juvenile Center, a secure detention facility maintained by the New York City Commissioner of Social Services to await an adjudicatory hearing.
However, before an adjudicatory hearing could be held, Dr. Guggenheim, the psychiatrist at Spofford Juvenile Center, advised the court on November 5, 1973 that David urgently needed hospitalization and could not be maintained at Juvenile Center. According to Dr. Guggenheim’s report, “ at Juvenile Center he is highly unmanageable, frequently assaultive, markedly inappropriate and very uncomfortable. Attempts to medicate this youngster have been unsuccessful, in part because he refuses medication.” Spofford Juvenile Center is a secure detention, facility structured to house alleged and adjudicated juvenile delinquents. It is not a facility to house mentally ill children. Inasmuch as David was no longer under the jurisdic *494 tion of the Commissioner of Mental Hygiene, it would have been a violation of his civil liberties for anyone at Juvenile Center to force him to take medication. On date of discharge from Queens Children’s Hospital the discharge note indicated that respondent was receiving 100 mgs. of Mellaril three times a day. However, since David was unmanageable without medication, the court had no other alternative than to remand him to Elmhurst Hospital on November 7,1973. He remained there until November 29,1973 when he was again referred to Spofford Juvenile Center following discharge by the hospital.
On December 4, 1973, Dr. Guggenheim again requested hospitalization for David. “ We request this youngster be removed from Juvenile Center where he is in danger not only of injury to himself by his provocative behavior, but is also endangering other children. Finally, we wish to indicate it is impossible to administer medication at Juvenile Center in the amounts needed to maintain him. ’ ’ Therefore, David was again remanded to Elmhurst City Hospital where he remained until January 15, 1974 when he wás discharged. A hearing on the juvenile delinquency petition was scheduled for January 1-8, 1974 based on the hospital’s assurance that David was ready for a hearing.
On January 16, 1974 Dr. Guggenheim, in an emergency psychiatric report, reported to the court as follows:
“ David M. was returned to Juvenile Center once again discharged from Elmhurst City Hospital. We call attention to the report from Elmhurst Hospital in which the youngster is a danger both to himself and to others is repeatedly emphasized. The hospital reports further indicate his excitability, poor judgement and hi-s obvious progressive deterioration. Indeed the youngster was unable to be Contained because of his violence on the Child Psychiatric Ward and had to be transferred by them to the Acute Male Adult Ward. His explosiveness, violence and his poor judgement is a danger to himself and to others'were the reasons which led to our recommendation of hospitalization twice previously. We also emphasize that both at Juvenile Center and at the hospital the youngster refuses to accept necessary medication.
“ For the above reasons we again, for the third time, respectfully urge the court not to return this youngster to Juvenile Center where he cannot be dealt with appropriately and poses a danger to himself and to others. Injuries both to himself and to others have already taken place as documented previously. In our opinion this youngster is in need of long term hospitalization where appropriate psychiatric treatment and medication are *495 available. This youngster is not suitable for placement at Juvenile Center.”
Therefore, the court had no other alternative than to remand David back to Elmhurst City Hospital, Psychiatric Division, and to order a competency hearing to resolve the conflicting psychiatric information in respect to this youngster.
A hearing was held on February 8,1974, continued on February 15, 1974 and then further continued on March 7, 1974 so that the complete psychiatric history of this youngster was available to the court.
The court finds that based upon the testimony and the medical records of City Hospital at Elmhurst and the medical records of Queens Children’s Hospital and the psychiatrist’s reports from Juvenile Center that:
(1) David M. is presently mentally ill within the definition of subdivision 17 of section 1.05 of the Mental Hygiene Law and has been mentally ill for the past seven years. iSubdivision 17 defines mental illness as ‘ ‘ an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care and treatment.”
(2) That David was receiving care and treatment for his illness at Queens Children’s Hospital for 16 months prior to the alleged delinquent act that brought him before the Family Court and that he continued to receive care and treatment at that hospital for five months thereafter until his discharge from the hospital to the court on October 17,1973.
(3) That at the time David was discharged to Family Court he was still mentally ill and was still in need of care and treatment and that said discharge to Family Court was premature and that this -finding of continuing mental illness is confirmed by the records of the City Hospital at Elmhurst, Juvenile Center, as well as by the records of Queens Children’s Hospital.
(4) That the consensus of psychiatric opinion is that David will not benefit from further hospitalization at this time but now needs “ placement in a structured, closed residential institution for the protection of others as well as himself ’ ’ where he can be given educational and vocational training, medication whenever necessary, and psychotherapy.
(5) That the State Commissioner of Mental Hygiene pursuant to the Mental Hygiene Law (§§ 7.05 and 9.03) has been given the power to provide such a facility or to contract *496 for such a facility for the care and treatment of mentally ill children. The power does not reside in the Commissioner of Social Services, Division For Youth or Department of Education as defined respectively in sections 20 and 34 of the Social Services Law, article 19-G- of the Executive Law and sections 101, 301, 305, 308 and 311 of the Education Law, to provide such care.
(6) That the State Commissioner of Mental Hygiene should have exercised those powers and not have discharged a mentally ill youngster to Family Court.
In view of the foregoing, it is hereby ordered that David M. be remanded back to the care and custody of the State Commissioner of Mental Hygiene, and it is further ordered that pursuant to the powers granted under section 255 of the Family Court Act that the State Commissioner of Mental Hygiene provide or contract for a proper facility for the care and treatment of this mentally ill child by implementing the recommendations of the psychiatrists for a structured, closed residential setting.
This matter is adjourned until May 17,1974. At that time the court is to be advised as to the affirmative plan for care and treatment that has been formulated by the State Commissioner of Mental Hygiene to ensure this youngster’s right to treatment. (See Usen v. Sipprell, 41 A D 2d 251.)
This court was impressed by a number of facts that came if* light in the course of these proceedings. The expert witnesses who appeared, and who have had professional intercourse with the respondent seemed sincerely interested” in helping him.
It would seem, based on testimony herein, that David is not a proper subject for treatment in an ordinary mental hospital, nor an appropriate subject for placement in an institution for ordinary juvenile delinquents. The experts are at a loss to know what to do with David and say the courts must now bear the responsibility of planning for him. It seems that David’s case is not unique and other children are, and have been in a similarly unfortunate state of limbo. The courts are not an executive agency with power to provide the services required by mentally ill children. That is the exclusive province of the executive branch and specifically the Department of Mental Hygiene. The Commissioner of Mental Hygiene is provided with authority to service a child such as David and a remand to the commissioner’s custody is the most appropriate disposition of this case at this time.