William Rigler, J.
The court, in the instant case, is presented with an extremely difficult problem, to wit, assessing responsibility for appropriate placement of a delinquent child.
Leopoldo Z. was born on March 5,1958. In March of 1972, by admission, Leopoldo was found to be a person in need of supervision. He was placed on probation in January of 1973. On January 3,1974, Leopoldo was arrested on a charge of homicide having apparently accidentally shot a friend. At his initial court appearance on January 4, 1974, Leopoldo was remanded to Juvenile Center (hereinafter “ J. C.”). On January 8, 1974, he was remanded for a full study to Kings County Hospital (hereinafter “ K. C. H. ”), upon the recommendation of Dr. Brownstein of the Kings County Rapid Intervention Project. On February 13, 1974, respondent entered an admission to the charges of assault and possession of a dangerous weapon and a finding of juvenile delinquency was made on these charges only. He was remanded to J. C. pending exploration of placement *867 because it was apparent he could not be paroled. The psychiatric, psychological and social service reports prepared by K. C. H. indicate that Leopoldo is moderately mentally retarded, has poor judgment and has an antisocial personality. It was recommended that he be placed in a structured residential setting where he would receive educational rehabilitation and vocational training.
On April 15, 1974, after several adjournments for further exploration of placement, the court was advised by Probation Officer Schiffler that all appropriate placements had been explored without success. The institutions or agencies which were contacted included: Division for Youth, Catholic Charities, Federation of Protestant Welfare Agencies, Jewish Board of Guardians, St. Vincents Hall, St. Joseph’s Hall, Lincoln Hall, the Woods Schools, Maimonides Institute, Gra-Mar Hall, Bureau of Child Welfare Group Homes and Brooklyn Developmental Services. Probation Officer Schiffler noted that most of the above institutions rejected Leopoldo because of his moderate mental retardation. He suggested that Brooklyn Developmental Services (hereinafter “ B. D. S.”) a division of the New York State Department of Mental Hygiene, was the most appropriate institution to minister to the problems of Leopoldo as it is mandated to provide comprehensive services for the mentally disabled. In light of the foregoing, the court ordered that a representative of B. D. S. appear on the adjourned date.
On April 29, 1974, Mr. Henry B. Marquit, Chief of Service of Boro Community Services of B. D. S. appeared before the court. He described the function of B. D. S. to the court (which comported with Probation Officer Schiffler’s) as well as the residential facilities which B. D. S. operates. He stated that Leopoldo was within the spectrum of children serviced by B. D. S., but that preference is given to the severly handicapped. Furthermore, B. D. S. was not yet prepared to deal with children with behavioral problems such as Leopoldo. Mr. Marquit then requested and was granted an adjournment to May 9, 1974, in order to allow B. D. S. to study the prior clinical materials, and to do its own study and evaluation.
On May 9, 1974, Mr. Steven B. Chafetz, Staff Psychologist for B. D. S. appeared before the court and submitted a summary of his clinical impressions and recommendations concerning Leopoldo.
The summary contains the following passages generally relevant to dispositional alternatives: “ Leopoldo is in need of a highly structured, benevolent closed in residence facility *868 “ Under no circumstances should he return home. His parents are unable to control him, and the general environment is crime inducive.” Thereafter, the summary .states that placement at a B. D. S. facility would be “ highly inappropriate ” for a number of reasons. Basically, the parties are agreed .that B. D. S. facilities as presently constituted would be inappropriate for a mildly retarded, emotionally disturbed child such as Leopoldo.
However, the court can no longer in good conscience indefinitely continue the incarceration of Leopoldo at J. C., particularly in light of B. D. S.’s acknowledgment that such incarceration has in all probability caused the child to become depressed and hostile. Neither can the court, for want of a better alternative or otherwise, place Leopoldo in a setting, such as a training school, which cannot provide the services and treatment which are indicated (see, e.g., Matter of Maurice C., 44 AD 2d 114).
In light of the foregoing, the court finds that B. D. S., as the local representative of the New York State Department of Mental Hygiene, is and should be charged with the responsibility of finding or creating a suitable facility in which Leopoldo may be placed. (See, e.g., Mental Hygiene Law, § 7.05.) Pursuant to section 255 of the Family Court Act, B. D. S. is hereby ordered to render its assistance and co-operation by exploring placement alternatives and by reporting on its efforts on the adjourned date of May 31, 1974. (Usen v. Sipprell, 41 A D 2d 251; Matter of Edward, M., 76 Misc 2d 781; Matter of David M. Family Ct, N. Y. County, March 18, 1974, Miller J.) B. D. S. is further put on notice that in the event it does not provide the court with a viable alternative, the court may consider ordering B. D. S. to create an appropriate facility for Leopoldo.