John L. Larkin, J.
This is a proceeding, brought on by order to show cause, pursuant to CPLR article 78, to compel the respondent Ellenville Central School District (Ellenville) to permit certain foster children residing within its jurisdiction to attend school for the term commencing September, 1974. The petition was initiated by various foster parents and foster children residing within the respondent district "and all others similarly situated”.
On the original return date of the petition, petitioners and respondent jointly moved for an order under CPLR article 10 directing that certain other parties be added as respondents on the ground that their absence would prevent the granting of complete relief between the original parties. This motion was granted and the petition was amended by adding a third cause of action against additional respondents which sought to mandate the added respondents to pay Ellenville tuition costs of certain foster children under subdivision 5 of section 3202 of the Education Law. Various social services departments and districts, boards of education and school districts have been served and/or have appeared. This court ordered respondent Ellenville to admit the infant petitioners to a full course of elementary and secondary education in its schools, pending the determination of this proceeding, to which order Ellenville immediately complied.
Consideration has been given to the defenses which have been raised as to this court’s jurisdiction of this matter and to the venue chosen by petitioners. These arguments are without merit.
This proceeding arises under subdivision 5 of section 3202 of the Education Law, effective January 1, 1974. Paragraph a provides that the cost of instruction of foster children placed in family homes at board by a social services district or State agency shall be borne by the school district in which the pupil resided at the time the social services district or State agency assumed responsibility for the pupil’s maintenance and support, unless the social services district or State agency had assumed the responsibility for tuition costs prior to January 1, 1974.
Paragraphs b and c deal with children cared for in free family homes and family homes at board who are not sup *514 ported or maintained at the expense of a social services district or State agency. Under paragraph b when such family homes are the only residences of the children they are deemed residents of the school district in which the home is located. Under paragraph c when the family homes are not the only residences of the children, those who apply for the first time for admittance to the schools in which the family home is located during the school year 1973-1974 are to be admitted upon terms and conditions established by the board of education, including payment of tuition, unless the board establishes to the commissioner’s satisfaction that there are valid reasons for exclusion of the children. Paragraph d sets forth the manner of establishing the tuition.
The primary issues raised in opposition to this application are based upon the alleged unconstitutionality of subdivision 5 of section 3202 of the Education Law under the Constitutions of the State of New York and the United States. The Court of Appeals has "consistently held that a proceeding under article 78 is not the proper vehicle to test the constitutionality of legislative enactments” (Matter of Kovarsky v Housing & Development Administration, City of N. Y, 31 NY2d 184, 191). There is ample authority for the treatment of a proceeding brought under CPLR article 78 as if it were an action for a declaratory judgment (CPLR 103, subd [c]; Matter of Sloane v Weber, 42 AD2d 1036). This proceeding is converted into one for declaratory judgment.
The Legislature of the State of New York has the duty to provide for the support and maintenance of a system of free common schools for the education of all of the children of the State (NY Const, art XI, § 1). A person over 5 and under. 21 years of age is entitled to attend the public schools maintained in the district or city in which such person resides without the payment of tuition (Education Law, § 3202, subd 1). The care and support of the needy are public concerns to be provided for by the State in a manner to be determined by the Legislature.
Subdivision 5 of section 3202 of the Education Law reveals an intent by the Legislature to place liability for tuition costs of foster children upon the school district of residence at the time a child came into the care of a social services district. There is an exception where tuition costs were paid by a social services district for a foster child prior to January 1, 1974. The effect of the statute, of course, is to shift the financial *515 burden from the school district where the foster home is located to the school district of original residence.
The controversy between the petitioners and the original respondent Ellenville illustrates the wisdom of subdivision 5 of section 3202 of the Education Law. The Ellenville School District is a relatively small and rural school district without a large school tax base. It appears from this record that at the date of the commencement of this proceeding there were 56 foster children living within the Ellenville Central School District who had resided in a variety of school districts, mostly in the metropolitan New York area, prior to their placement in foster homes within the Ellenville district by outside social services districts or State agencies. Obviously the influx of 56 foster children into its schools in a district of Ellenville’s small size imposes a severe economic burden upon its taxpayers. The failure of the various districts from which various foster children come to pay tuition costs as mandated by subdivision 5 of section 3202 of the Education Law, despite Ellenville’s demand for reimbursement, caused Ellenville to refuse admittance of the children in September, 1974. Although this court surely sympathizes with the plight of Ellen-ville and other districts in comparable positions, the right of the foster children to receive a free public education is paramount.
Courts are given the power of interpretation and not the power of legislation, and do not sit in review of the discretion of the Legislature or determine upon the expediency, wisdom or propriety or its actions in matters within its powers (Rieseberg v State of New York, 40 Misc 2d 676; Zachary v Macy & Co., 39 AD2d 116). The enactment of subdivision 5 of section 3202 of the Education Law was within the power and duty of the Legislature to provide a free public education to all of its children and to provide for those in need and the chosen manner of allocating the burden of paying tuition costs among the school districts, social services districts and State agencies does not seem unreasonable. There has been no showing on this application sufficient to overcome the strong presumption that the legislative enactment in issue is constitutional (Matter of 241 East 22nd St. Corp. v City Rent Agency, 33 NY2d 134).
Citing Shapiro v Thompson (394 US 618), the respondent New York City agencies argue that the statute violates the United States Constitution. The enactment of subdivision 5 of *516 section 3202, however, does not create an invidious distinction between classes of citizens. The foster children are not denied a free public education. The Legislature has merely made a determination as to which school district (or social services district or State agency) should bear responsibility for at least a portion of the cost of children who are placed in a district. The only classification is a rational one between such school districts and agencies. The Equal Protection Clause has not been violated by this statute which establishes a rational means of accomplishing a legitimate State purpose.
The further constitutional arguments advanced, including the claims that the subject statute is restrictive of the right to travel and that it violates the due process clauses of the Federal and State Constitutions, are without merit.
In upholding the constitutionality, this court is not oblivious to the practical difficulties inherent in operation of this statute. Many of the children involved have led transient lives, and, at various times have been the responsibility of several widely divergent social services districts or State agencies. The difficulty in determining the school district in which such a pupil resided at the time such district or agency assumed responsibility for his support is obvious. This problem may be compounded by the necessity of determining whether any social services district or State agency assumed responsibility for tuition costs prior to January 1, 1974. Paragraphs b and c add the problem of determining the actual residence of children cared for in free family homes and family homes at board.
Subdivision 5 of section 3202 of the Education Law, in addition to causing problems in administration, may also serve to operate in a manner which may be very unfair to the school district of origin in many cases. As argued by counsel for the City of Yonkers Board of Education: "School districts are permanently locked into liability for foster care educational expenses when they are no longer the home school district and regardless of the change of circumstances in the foster placement. Once determined, the school district remains liable until the foster child is eighteen or twenty-one years of age should he continue education in college.” The City of Yonkers then points out, through specific examples, how under the present statutory scheme the Yonkers Board of Education would be assessed for the cost of educating children whose natural family resided only briefly in the City of
*517 Yonkers and no longer resides there. Such result does seem unfair, but in view of the beneficial aspect of the statute in protecting the district which actually educates the child, this court should not interfere with the means chosen by the Legislature to effect the intended result.
The problems inherent in administering subdivision 5 of section 3202 of the Education Law, specifically those resulting from the resolution of the factual issue of the responsibility for tuition in each case, require judicial direction. In construing this statute, the two chief concerns of this court are the rights of the foster children to receive a free public education and the right, granted by the statute, of the school district in which a foster child resides, to receive reimbursement for tuition from the school district of the child’s origin. To require the district of residence to ascertain, through such means as investigation and litigation, the district or agency responsible under the statute would be unduly burdensome. In general statutes are to be given a construction which is reasonable, effective and which will not work hardship or injustice (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 143, 144, 146). There seems to be an assumption implicit in this statute that it will operate through co-operation and compliance. This instant case indicates just the opposite.
The most serious obstacle to the operation of the statute arises from the claims of districts from which foster children were directly transferred to the school districts in which they presently reside that, under the particular facts relevant to the child in question, they are not responsible under the statute. This court determines that the school district of present residence, which this statute was obviously designed to assist, should not have the burden of ascertaining the responsible district or agency. Accordingly, a presumption should be read into the statute that, unless another school district, social services district, State department or State agency has assumed responsibility for tuition payment, the school district in which the child resided immediately prior to his transfer to the school district of present residence is the body responsible for the tuition payment under subdivision 5 of section 3202 of the Education Law.
This proceeding is converted into an action for declaratory judgment. Declaratory judgment is granted that subdivision 5 of section 3202 of the Education Law is violative of neither the State nor Federal Constitutions. Judgment is granted *518 declaring that all social services districts and State departments or agencies are to comply with the express terms of subdivision 5 of section 3202 of the Education Law by immediately forwarding reimbursement for tuition as required by the statute.
Judgment is further granted declaring that the school district in which each child resided immediately prior to his transfer to the school district of present residence is the body responsible for the reimbursement for tuition required by the statute, unless another school district, social services district, State department or State agency has specifically assumed responsibility for such tuition by making tuition payments prior to the date of this order. The school district of residence immediately prior to the transfer to the district of present residence may, where applicable, in turn seek redress against the school district in which the pupil resided at the time the Social Services Department or State agency assumed responsibility for his support.
Finally, judgment is granted declaring that no school district in this State may refuse to admit any pupil to a full course of elementary or secondary education because of its failure to receive reimbursement for the cost of instruction as mandated by subdivision 5 of section 3202 of the Education Law.
All motions and cross motions inconsistent with this opinion are denied.