Joseph J. Rybarczyk, J.
Laurie Lofft was born on February 10, 1960, and led a normal childhood until the summer of 1964, when she became ill with a high fever. She was hospitalized and after her release from the hospital she had seizures and her behavior and verbal ability showed signs of regression. She was taken to the Cayuga County Mental Health Clinic and to specialists in Pennsylvania for evaluation and testing. She was enrolled at the Elbridge Elementary School where she was allowed to attend for approximately one week. After a stay at home she was enrolled in the DeVilla Sloan School in Syracuse, New York. Laurie participated in this program for two weeks and her parents were again told she would require small group instruction. She was subsequently enrolled in the Casey Park School for half-day sessions. Laurie continued in that program until June of 1969 when her parents were told that she would not be permitted to return in September because it was felt that she would not benefit from the new open classroom of the BOCES program. Laurie remained at home until the spring of 1970 when her mother succeeded in enrolling her in a program at the Auburn *433 Association for Retarded Children where she attended for one and one-half hours per day. She continued this program, despite a sporadic attendance, until September of 1972. From September of 1972 until the present day Laurie received no meaningful instruction. It was then decided in a meeting with the Port Byron Central School System and the Cayuga County Board of Co-operative Education Services and Seguin Community Services that a program should be provided for Laurie and an application was made to the Hutchings Psychiatric Center. When Laurie was not accepted in the Hutchings Adolescent Program, the school district arranged for home-bound instruction. During this time Seguin Community Services discovered the Devereaux School in Pennsylvania would consider Laurie’s application. When her acceptance was certain, an application was for an order pursuant to section 232 of the Family Court Act was made to this court; but again Laurie was turned down.
This petition is brought seeking an order pursuant to section 255 of the Family Court Act to require the Commissioners of Education and Mental Hygiene to work together to locate or develop a program for Laurie. Mrs. Lofft asks this court to enter an order requiring the officers in Albany to work together to either locate or develop a program which will give Laurie an opportunity to learn.
Article VI (§ 13, subd b) of the New York State Constitution delineates the jurisdiction of the Family Court. While there is no specific mention of physically or mentally handicapped children, article VI (§ 13, subd b, par [1]) extends the court’s jurisdiction to actions and proceedings involving "protection, treatment, correction and committment of those minors who are in need of the exercise of the authority of the court because of [such] circumstances of neglect, delinquency or dependency as the legislature may determine”. Subdivision (b) of section 115 of the Family Court Act then provides that the Family Court has "such other jurisdiction as is set forth in this act, including * * * proceedings concerning physically handicapped and mentally defective or retarded children.”
Jurisdiction over physically handicapped children is then granted by subdivision (a) of section 232 with subdivision (b) authorizing the court to enter an order providing special educational training including transportation, maintenance and tuition which may be charged against the county.
Because the term "mental retardation” (§ 231) is rather *434 specific, most jurisdictional disputes arise under subdivision (c) of section 232 and revolve around whether a given child is "physically handicapped.”
These statutes are general enough to embrace a large class of children within the Family Court’s jurisdiction, and in the past, orders have been entered to assist children, with a wide range of disabilities indicating the broad jurisdictional base which courts have accepted: (1) organic brain syndrome (Matter of Peter H., 66 Misc 2d 1097); (2) autism and schizophrenia (Matter of Leitner, 38 AD2d 554); (3) chronic brain syndrome, cerebral palsy, and mental retardation (Matter of Diana L. v State of New York, 70 Misc 2d 660); (4) schizophrenia evidenced by short attention span, inability to conform to classroom routines, hyperactivity, distractibility, auditory hallucinations, etc. Matter of David H., 72 Misc 2d 59); (5) cerebral disrythamia (Matter of Hilary M., 73 Misc 2d 513); (6) learning disabilities — dislexia, disagraphia (Matter of Kirkpatrick, 77 Misc 2d 646); (7) mild retardation with serious behavior disorders Matter of Jetty, 79 Misc 2d 198).
After a jurisdictional basis has been established, the next significant inquiry in most section 232 cases focuses on whether the school district can provide a program sufficient to meet the child’s needs. (Matter of Daber, 71 Misc 2d 303.) In Matter of Silver (79 Misc 2d 247), the implication is that the extraordinary expenditures authorized by section 232 should not become a substitute for the responsibilities which the Education Law places on the school districts. If it is found that the school district cannot meet its mandate to provide "suitable” educational facilities, the court may require the expenditure of additional funds to provide tuition, transportation and maintenance at a special school which can offer the necessary instruction. If no program can be located, the court can turn to section 255 which was designated for that situation. "It is hereby made the duty of and the family court or a judge thereof may order, any state, county and municipal officer and employee to render such assistance and cooperation as shall be within his legal authority, as may be required, to further the objects of this act.” (Family Ct Act, § 255.)
Of course, section 255 does not confer any jurisdiction in any of itself. It contains two prerequestes: (1) that which is to be ordered is within the legal authority of the agency or officer subject thereto; • (2) the order must be necessary to further "the objects of [the] act.”
*435 While the first requirement is fixed by law, the latter must be assessed in the light of the circumstances of the particular case. The principal of reasonableness should be applied with the need for services being balanced against the conflicting demands upon the particular agency. (Matter of Hilary M., 73 Misc 2d 513, 607, supra.) Yet it is clear that the interest of the child and the family must not be subordinated to agency claims of insufficient time, staff, or funds especially where the "root cause of the difficulty is administrative inaction.”
Before entering a 255 order, the courts will generally require the petitioner to establish: (1) the particular information or service needed; (2) whether the party subject to the proposed order has the legal authority to provide such services or information.
The court will then examine the agency resources and balance specific need for services and/or information against the legitimate but conflicting demands of the agency.
It is important to remember that this legislative grant of authority was deliberately broad, and the only apparent limitation is that the order entered pursuant to section 255 be reasonable and appropriate. Consequently, orders entered under this section have included: (1) noninstitutional PINS placement ordered (Matter of Jeanette M., 40 AD2d 977); (2) department of Social Services ordered to provide a prehearing noncustodial detention for a parentless child charged with juvenile delinquency (Matter of Norman C., 74 Misc 2d 710); (3) school officials ordered to transfer handicapped child who had been the subject of great ridicule to a new school (Matter of John M., 75 Misc 2d 672); (4) department of Social Services ordered to develop a program of foster homes for juvenile delinquents (Matter of Edward M., 76 Misc 2d 781); (5) records of Police Department and Family Court ordered expunged where State failed to make out a prima facie case in a delinquency proceeding (Matter of Terrance J., 78 Misc 2d 437; (6) department of Mental Hygiene ordered to provide psychiatric treatment for juvenile delinquents (Matter of David M., 77 Misc 2d 491; Matter of Graham S., 78 Misc 2d 351; Matter of Leopoldo Z., 78 Misc 2d 866).
Given the wide range of services which have been ordered pursuant to section 255, there can be no doubt that this court has the power to require the Commissioners of Education and Mental Hygiene to locate or develop a program for children *436 whose needs cannot be met by the program which the school district must otherwise provide.
Section 305 of the Education Law provides that: "The Commissioner of Education is hereby charged with the following powers and duties: * * *
"2. * * * and shall advise and guide the school officers of all districts and cities of the state in relation to their duties and the general management of the schools under their control.”
Section 4404 (subd 2, par a) of the Education Law then provides that: "The board of education of each city and each union free school district shall be required to furnish suitable educational facilities for handicapped children * * * The need of the individual child shall determine which of such services shall be rendered.”
Section 308 of the Education Law gives the Commissioner of Education a blanket grant of authority to insure that all of the children in this State receive an educational opportunity.
Thus, the Education Law clearly gives the commissioner the authority and responsibility to assist the local school districts and the Family Court in locating an educational placement for children like Laurie, especially since failing to provide an educational opportunity for such children would constitute a violation of both State and Federal Constitutions.
The Commissioner of Mental Hygiene also has the authority to assist the Family Court in locating or developing a program of instruction from which children like Laurie may be reasonably expected to benefit. Section 7.09 of the Mental Hygiene Law describes the general powers and duties of the Commissioner of Mental Hygiene: "The commissioner shall exercise all powers vested in the department.”
Section 7.09 of the Mental Hygiene Law then sets forth the scope of the departments responsibilities and subdivision (a) of section 9.03 further delineates the duties and responsibilities of the commissioner, the entire section need not be repeated herein. It is clear to this court that by the foregoing statutory provision the Commissioner of Mental Hygiene has the duty and authority to assist the Family Court in locating or developing a program of instruction from which Laurie may reasonably be expected to benefit.
Handicapped children are guaranteed an educational opportunity by section 1 of article XI of the New York State Constitution as one Appellate Division explains: "the valuable *437 right to instruction as guaranteed by section 1 of article XI to all children of this state served as the impetus for the promulgation of the statutes”. (Matter of Claire, 44 AD2d 407, 411.)
There are now countless cases on record espousing the doctrine that this State guarantees the right to a public education to all children of the State. (Vaugn v Board of Educ. of Union Free School Dist. No. 2, Town of Hemstead, 64 Misc 2d 60; Matter of Jetter v Ellenville School Dist., 81 Misc 2d 511.)
Since this time an increasing number of cases regarding the right of handicapped children to an educational opportunity have been ruled on by the courts of this State. (Matter of David H., 72 Misc 2d 59; Matter of Downy, 72 Misc 2d 772; Matter of Kirschner, 74 Misc 2d 20; Matter of Arthur K., 74 Misc 2d 872.)
The court will mention in passing that it is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution to deny an educational opportunity to handicapped children while providing it to others and feels citing the numerous cases would be an exercise in repetition.
FINDINGS OF FACT
This court makes a finding that Laurie Lofft is a "physically handicapped” child within the meaning of the Family Court Act. Her condition indicates a neurological dysfunction and many of the behaviors which she exhibits have been identified as signals of an underlying organic impairment. The child’s present condition confirms the classic psychopathology of organicity. When examined by Dr. Seltzer at the Cayuga County Mental Health Center, he diagnosed her as a "brain damaged” child who has "moderate mental retardation” following an infection and grand mal epilepsy. The testimony demonstrates that Laurie is a handicapped child and has an enforceable claim to an educational opportunity supported by section 1 of article XI of the New York State Constitution, the provisions of the Education Law and the benefits of an order pursuant to section 255 of the Family Court Act.
CONCLUSIONS OF LAW
Laurie Lofft is being deprived of an educational opportunity. This deprivation has not resulted because Laurie cannot be *438 educated, but because the type of program she needs is not available locally. That Laurie Lofft is entitled to an educational opportunity pursuant to section 1 of article XI of the New York State Constitution and the Education Law. That this court has the power, and is fully justified, in entering an order pursuant to section 255 of the Family Court Act which will require the school district, with the assistance of the Commissioner of Education and the Commissioner of Mental Hygiene to locate or develop a program which will protect Laurie from further violation of her rights to an educational opportunity guaranteed her as hereinbefore set out.