Eli Wager, J.
"Rattle his bones over the stones!
"He’s only a pauper, whom nobody owns!”
T. Noel, The Pauper’s Drive
This is a CPLR article 78 proceeding brought by the foster parent and guardian of an 11-year-old orphan boy to secure for him a free public school education. The child resides within the boundaries of the Roosevelt School District, having been placed there by the Nassau County Children’s Bureau, an agency of the Nassau County Department of Social Services, which provides public assistance for the child. It appears that the infant in question was orphaned when his mother died in New Jersey in 1972. The whereabouts of his father were and remain unknown. He was at that time placed within foster care by the New Jersey State Department of Institutions and Agencies. In or about September of 1973 the New Jersey foster mother moved within the confines of the Amity-ville School District, in Nassau County, where she began to receive a grant for his care in November of 1973. At that time the child attended the Amityville schools. Thereafter, Timothy resided at St. Christopher’s Home in Sea Cliff and attended one of the schools operated by the respondent-intervenor, Board of Co-operative Educational Services (BOCES). Timothy, it is alleged, is a handicapped (learning disability) child for whom BOCES is charged with providing special education.
In or about June of 1976, the child was placed in the foster home of the petitioner who lives within the boundaries of Union Free School District No. 8 of the Town of Hempstead, known as the Roosevelt School District. Here, Timothy’s ordeal began. It appears that Roosevelt refused to accept the child into its own schools and refused to contract for the child’s education with BOCES on the contention that under the law (Education Law, § 3202, subd 5, par a), the responsibility for the education of the child and for contracting for such education lay with the school district in which the child "resided at the time the social services district or state department or agency assumed responsibility for the support and maintenance of such pupil”. Roosevelt contended in effect that *757 since it had no obligation to pay for Timothy’s education, it had no obligation to contract for it with BOCES and in any event was not responsible for the child. BOCES, not having a co-operating local school district, would not undertake the education of the child since its modus operandi requires that a component school district in the first instance refer appropriate cases to BOCES. In such cases, the local school district accepts responsibility for the education of any child placed with BOCES (Education Law, §§ 1950, 4404).
The conflict over the education of this 11-year-old pariah was finally resolved upon application to this court which resulted in a temporary order granted October 21, 1976, later amended on November 16, 1976, which provided that the respondents Roosevelt and BOCES were to "immediately provide for the admission to educational instruction of the said infant, Timothy Brown, at the Baldwin Harbor School, Baldwin, New York, such to include provision for transportation to the school, and to admit him without delay to said school at no tuition cost to himself or his foster family”. Thus, in late October, 1976, more than six weeks after the commencement of the school term, Timothy Brown was allowed to resume his constitutionally guaranteed education in the public schools of this county, pending the determination herein. The denial of an education to this poor, orphaned child, while several school districts haggled over their responsibility under the law, was certainly not our finest hour.
In a case in which so many have seemingly placed principle before person, principle bears restatement. First, Timothy Brown has an absolute constitutional right to a free public education (NY Const, art XI, § 1). That the child’s right to such an education is paramount (Matter of Jeter v Ellenville Cent. School Dist., 81 Misc 2d 511) cannot be gainsaid. It is the obligation of the school district within which the child resides, in the first instance, to provide education for that resident school child. (Education Law, § 3202, subd 1.)
The Legislature has, however, made special provision for children such as Timothy who are wards of public agencies by reason of their indigency. Such special provision was enacted as section 3202 (subd 5, par a) of the Education Law (L 1973, ch 867), which provided for special problems created by the movement of these children from agency to agency and from place to place in our State. The Legislature’s objective in so providing was to attempt to more equitably distribute the cost *758 of educating indigent children from the budgets of the relatively few "receiving districts” to which such children tend to gravitate by virtue of economic realities. Nassau County readily demonstrates the need for such redistribution of the burdens of educating these children. In our county, out of the 56 school districts, perhaps 6 will tend to have the greatest burden of children who are receiving aid to dependent children under the Social Services Law. Many are untouched by such children and most will have but a handful. The nature of society being what it is however, such districts as Roosevelt, Hempstead, Amityville, and a few others can be considered "impacted” by the poor and consequently bear a disproportionate share of the cost of educating children whose families produce relatively little or nothing in the way of tax revenue to support local public education.
In enacting the revision of section 3202 (subd 5, par a) of the Education Law the Legislature determined to try to spread the cost, using as a source of funds the school district in which they originally came under the jurisdiction of a social services agency or where they were placed in foster care in this State. In the case of Timothy Brown, that district is Amityville.
In Matter of Jeter v Ellenville Cent. School Dist. (81 Misc 705, supra), the Appellate Division, Third Department, affirmed a Special Term holding that the enactment of section 3202 (subd 5, par a) is constitutional. Also affirmed was the interpretation that the district of origin, that is the school district where the child first became subject to the jurisdiction of a social services agency, is the district upon whom the cost of educating the child throughout its school career descends.
The State Board of Social Welfare in co-operation with the State Education Department promulgated Part 8 of its rules (18 NYCRR Part 8), effective December 20, 1974, for the purpose of assisting school districts to provide instruction to foster care children who are public charges ("receiving districts”) to ascertain the school district which is responsible for payment of tuition for such children ("sending district”). Under Part 8, school authorities are informed shortly after a child, who is under the jurisdiction of a social services district, is placed in a foster home located in the school district. The receiving district is notified of the name and location of the sending district in which such child resided at the time he *759 became a public charge. This is to facilitate the reimbursement for tuition for the receiving district from the sending district.
It is not for this court to disapprove of a statutory scheme which has already been found to be constitutional by a higher court. The wisdom of the scheme, its effectiveness in addressing the problems to be solved and indeed its propriety are not within our purview. While we believe that there must be a better way of distributing the cost of educating these children who are truly the children of the State as a whole rather than that of a county or a school district, we are bound to accept the statute as it is, since it has been declared to be a valid exercise of the legislative power in this area. It appears to us however, that this statute leaves much to be desired in that it treats a cancerous lesion with "band-aid” therapy. A multitude of interdistrict claims and lawsuits are inevitable. (See Amityville Union Free School Dist. v Union Free School Dist., Supreme Ct, Nassau County, Oct. 25, 1976, Pantano, J.)
We must address ourselves to the argument posed by the respondent Amityville School District which would have this court determine that the school district which is truly liable in Timothy’s case is a district or a social services agency located in New Jersey. Hence, argues Amityville, this cost of tuition should be imposed on New Jersey or one of its subdivisions. The argument is patently without merit. New Jersey is not within our jurisdiction nor is it subject to our law. The reach of the Education Law is only within the boundary of this State and we cannot impose its burdens upon our sister State.
Accordingly, petitioner’s petition is granted to the extent that the infant Timothy Brown shall remain as a student in the Baldwin Harbor School of the Board of Educational Cooperative Services of Nassau County or at such other institution as they from time to time may deem proper for the child’s education at no cost for tuition or transportation to the child or to his foster family. The Roosevelt School District being the district of the child’s residence shall contract with BOCES for the education of the infant Timothy Brown. Roosevelt shall be entitled to recover from Amityville reimbursement for all costs incurred by Roosevelt in the education and/ or transportation of Timothy Brown. This proceeding is dismissed as to BOCES and as to the County of Nassau, neither *760 of whom have been shown to have any liability for the expenses of Timothy’s education.